Nos. 23-1708 and 23-1721

---

# In the
# United States Court of Appeals
# for the Seventh Circuit

---

PRENTISS JACKSON,

*Appellant*,

v.

UNITED STATES OF AMERICA,

*Appellee*.

---

On Appeal from the United States District Court for the
Central District of Illinois
Nos. 2:10-cr-20043-JES-JEH-1, 2:22-cr-20044-CSB-EIL-1

---

**DEFENDANT-APPELLANT PRENTISS JACKSON'S OPENING BRIEF AND
REQUIRED SHORT APPENDIX**

Anthony J. Dick
Louis J. Capozzi
  *Counsel of Record*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001.2113
+1.202.879.3939
lcapozzi@jonesday.com

*Counsel for Appellant*

*Pro Bono Appointed Counsel for Defendant-Appellant Prentiss Jackson*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1708, 23-1721

Short Caption: Jackson v. United States

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Prentiss Jackson

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Jones Day

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

NA

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

NA

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

NA

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

NA

Attorney's Signature: /s/ Anthony J. Dick      Date: 9/18/2023

Attorney's Printed Name: Anthony J. Dick

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 51 Louisiana Avenue N.W.

Washington D.C. 20001

Phone Number: 1.202.879.7679      Fax Number: NA

E-Mail Address: ajdick@jonesday.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-1708, 23-1721</u>

Short Caption: <u>Jackson v. United States</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Prentiss Jackson

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Jones Day

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        NA

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        NA

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    NA

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    NA

Attorney's Signature: <u>/s/ Louis J. Capozzi III</u>    Date: <u>September 18, 2023</u>

Attorney's Printed Name: <u>Louis J. Capozzi III</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✓]  **No** [ ]

Address: <u>51 Louisiana Avenue, N.W.</u>

     <u>Washington, D.C. 20001</u>

Phone Number: <u>1.202.879.3434</u>    Fax Number: <u>NA</u>

E-Mail Address: <u>lcapozzi@jonesday.com</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

JURISDICTIONAL STATEMENT ..................................................................... 4

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................. 4

STATEMENT OF THE CASE............................................................................. 5

    I.   Marijuana Legalization in Illinois................................................................. 5

    II.  The Stop ........................................................................................................ 7

    III.  Procedural History........................................................................................ 9

SUMMARY OF THE ARGUMENT ................................................................. 10

STANDARD OF REVIEW .............................................................................. 103

ARGUMENT ..................................................................................................... 13

    I.   Officer Barrie's Search of Mr. Jackson's Car Required Probable Cause. ........................ 14

    II.  The Police Lacked Probable Cause to Search Mr. Jackson's Car. ................................ 17

       A. When an officer observes plausibly innocent activity, probable cause generally requires corroborating evidence to substantiate his suspicion. ......................... 17

       B. Officer Barrie lacked probable cause to believe Mr. Jackson was unlawfully transporting marijuana. ........................................................................ 22

          1. Officer Barrie could not have smelled two grams of unburnt marijuana in a sealed plastic bag in the glovebox........................................................................ 22

          2. The smell of marijuana alone would not establish probable cause that Mr. Jackson was unlawfully transporting marijuana. ................................................ 26

       C.   The Government's Likely Arguments Are Unavailing. ................................. 31

    III.  Alternatively, this Court Should Remand to Allow the District Court to Assess Probable Cause in the First Instance. ............................................... 34

CONCLUSION.................................................................................................. 36

REQUEST FOR ORAL ARGUMENT .............................................................. 37

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ................................. 38

CERTIFICATE OF SERVICE ...................................................................................... 39

CIRCUIT RULE 30(d) CERTIFICATION ................................................................ 40

REQUIRED SHORT APPENDIX

# TABLE OF AUTHORITIES

**CASES**                                                                                           **Page**

*Boyd v. United States*,
    116 U.S. 616 (1886) ..................................................................................................15

*Bradley v. Village of Univ. Park, Ill.*,
    59 F.4th 887 (7th Cir. 2023) ...................................................................................35

*Brendlin v. California*,
    551 U.S. 249 (2007) ................................................................................................33

*Bumper v. North Carolina*,
    391 U.S. 543 (1968) ................................................................................................15

*Carpenter v. United States*,
    138 S. Ct. 2206 (2018) ............................................................................................15

*Carroll v. United States*,
    267 U.S. 132 (1925) .........................................................................................10, 15

*Commonwealth v. Barr*,
    266 A.3d 25 (Pa. 2021) ...............................................................................19, 25, 29

*Commonwealth v. Cruz*,
    945 N.E. 2d 899 (Mass. 2011) ....................................................................... passim

*Commonwealth v. Overmyer*,
    11 N.E. 3d 1054 (Mass. 2014) ........................................................................ passim

*District of Columbia v. Wesby*,
    583 U.S. 48 (2018) ..................................................................................................18

*Florida v. Harris*,
    568 U.S. 237 (2013) ........................................................................................ passim

*Illinois v. Gates*,
    462 U.S. 213 (1983) .........................................................................................17, 18

*Kansas v. Glover*,
    140 S. Ct. 1183 (2020) .................................................................................... passim

*Lewis v. State*,
    233 A.3d 86 (Md. 2020) ..................................................................................2, 12, 28

*Maryland v. Wilson*,
    519 U.S. 408 (1997) ................................................................................................16

*Montano v. Texas*,
   867 F.3d 540 (5th Cir. 2017) ...................................................35

*Ornelas v. United States*,
   517 U.S. 690 (1996).............................................................13, 24

*Pacheco v. State*,
   465 Md. 311 (2019) ...................................................................1

*Pennsylvania v. Labron*,
   518 U.S. 938 (1996) (*per curiam*) .........................................15

*People v. Brukner*,
   25 N.Y.S. 3d 559 (City Court 2015).........................................11

*People v. Hall*,
   57 Cal. App.5th 946 (Cal. Ct.. App. 2020) ...............................32

*People v. Hill*,
   162 N.E.3d 260 (Ill. 2020) .........................................18, 26, 27

*People v. Molina*,
   208 N.E.3d 579 (Ill. App. Ct. 2022) .........................................21

*People v. Molina*,
   No. 129327, 2023 WL 2751668 (Ill. Mar. 29, 2023)...........17, 21

*People v. Molina*,
   No. 2020-TR-5612 ....................................................................26

*People v. Redmond*,
   207 N.E. 3d 1175 (Ill. App. Ct. 3d Dist. 2022 .........19, 21, 29, 32

*People v. Stout*,
   477 N.E.2d 498 (Ill. 1985).........................................................32

*People v. Stribling*,
   No. 3-21-0098, 2022 WL 4299289 (Ill. App. Ct. 3d Dist. Sept. 19, 2022) .................. passim

*People v. Trone*,
   No. B294933, 2021 WL 1205194 (Cal. Ct. App. Mar. 30, 2021) .........................................19

*People v. Zuniga*,
   372 P.3d 1052 (Colo. 2016).........................................12, 21, 22

*See v. City of Seattle*, 387 U.S. 541(1967)..................................15

*Spinelli v. United States*,
   393 U.S. 410 (1969)..................................................................18

*State v. Clinton-Aimable,*
    232 A.3d 1092 (Vt. 2020) ............................................................ passim

*State v. Moore,*
    991 N.W.2d 412 (Wis. 2023) ........................................................ passim

*State v. Pollman,*
    286 Kan. 881 (2008) ................................................................23, 24

*State v. Sisco,*
    373 P.3d 549 (Ariz. 2016)................................................................20

*State v. T.T.,*
    479 P.3d 598 (Or. Ct. App. 2021) ......................................................20

*State v. Torgerson,*
    A22-0425, 2023 WL 5944620 (Minn. Sept. 13, 2023)....................19, 21

*Texas v. Brown,*
    460 U.S. 730 (1983) ........................................................................18

*United States v. Albert,*
    579 F.3d 1188 (10th Cir. 2009) ........................................................28

*United States v. Bentley,*
    795 F.3d 630 (7th Cir. 2015) ......................................................13, 18

*United States v. Dingwall,*
    6 F.4th 744 (7th Cir. 2021) ..............................................................35

*United States v. Esquivel-Rios,*
    725 F.3d 1231 (10th Cir. 2013) ........................................................27

*United States v. Eymann,*
    962 F.3d 273 (7th Cir. 2020) ............................................................13

*United States v. Franklin,*
    547 F.3d 726 (7th Cir. 2008) ......................................................28, 31

*United States v. Funds in Amount of One Hundred Thousand One Hundred
    Twenty Dollars,*
    730 F.3d 711 (7th Cir. 2013) ......................................................25, 26

*United States v. Gray,*
    548 F.Supp.3d 807 (S.D. Ind. 2021) ............................................23, 25

*United States v. Kempf,*
    400 F.3d 501 (7th Cir. 2005) ......................................................13, 35

*United States v. Kizart*,
    967 F.3d 693 (7th Cir. 2020) ...................................................31

*United States v. McCaster*,
    466 Fed. App'x 443 (6th Cir. 2011) .......................................22

*United States v. Merryman*,
    630 F.2d 780 (10th Cir. 1980) .................................................23

*United States v. Murry*,
    844 F. App'x 39 (10th Cir. 2021) ...........................................23

*United States v. Paige*,
    870 F.3d 693 (7th Cir. 2017) .................................1, 12, 31, 32

*United States v. Peters*,
    743 F.3d 1113 (7th Cir. 2014) ................................................31

*United States v. Pittman*,
    782 Fed.Appx. 663 (10th Cir. 2019) ......................................23

*United States v. Randle*,
    No. 1:21-CR-32, 2022 WL 17038795 (N.D. Ind. 2022) ..........23

*United States v. Robeles-Ortega*,
    348 F.3d 679 (7th Cir. 2003) ...................................................34

*United States v. Ross*,
    456 U.S. 798 (1982) .................................................................16

*United States v. Watson*,
    900 F.3d 892 (7th Cir. 2018) (Barrett, J.) ........................27, 30

*United States v. Wimbush*,
    337 F.3d 947 (7th Cir. 2003) ...................................................31

*Wong Sun v. United States*,
    371 U.S. 471 (1963) ...................................................18, 30, 34

## STATUTES

7 U.S.C.§ 1639(1) ............................................................................5

18 U.S.C.
    § 922(g)(1) ..............................................................................4, 9
    § 3231 ..........................................................................................4

21 U.S.C.§ 802(16) ..........................................................................5

28 U.S.C.§ 1291 ................................................................................................4

2019 Cannabis Act ...........................................................................6, 17, 20, 21

Agriculture Improvement Act of 2018, H.R. 2, 115th Cong. § 12619 ........1, 5

Ill. Comp. Stat. 5/11-502.1 .............................................................................6

Ill. Comp. Stat. 5/12-201 ...............................................................................7

Ill. Comp. Stat. 98/1 *et. seq.* ..........................................................................5

Ill. Comp. Stat. 130/1 (West 2014) ...............................................................5

Ill. Comp. Stat. 550/4(a) (West 2016) ...........................................................5

Ill. Comp. Stat. 705/10-35(a)(2)(D) ..............................................................6

Ill. Comp. Stat. Ann. 89/5 ..........................................................................5, 6

Ill. Comp. Stat. Ann. 705/1-10...............................................................5, 6, 7

Industrial Hemp Act....................................................................................6, 7

Pub. Act 101-27 ..............................................................................................6

## OTHER AUTHORITIES

Alena Hall, *CBD Statistics, Data and Use 2023*, Forbes Health (July 10, 2023),
    www.forbes.com/health/body/cbd-statisitics ..............................................26

Claire J. Rice, *Failing the Sniff Test: Using Marijuana Odor to Establish
    Probable Cause in Illinois Post-Legalization*, U. CHI. L. REV. ONLINE
    (Sep. 23, 2022) ...........................................................................................6

Cynthia A. Sherwood et al., *Even Dogs Can't Smell the Difference: The Death of
    "Plain Smell," as Hemp is Legalized*, 55 TENN. B.J. 14 (2019)...........................11

Cece White, *Comment, The Sativas and Indicas of Proof: Why the Smell of
    Marijuana Should Not Establish Probable Cause for a Warrantless Vehicle
    Search in Illinois*, 53 UIC JOHN MARSHALL L. REV. 187 (2020)  ..................20

David A. Sklansky, *Traffic Stops, Minority Motorists, and the Future of the
    Fourth Amendment*, 1997 SUP. CT. REV. 271 (1997) .........................................15

*Does Smoking Hemp Get You High?*, Ounce of Hope (Feb. 1, 2021)
   https://www.ounceofhope.com/will-smoking-hemp-or-cbd-flower-get-me-
   high ......................................................................................................................26

Lauren Williams & Samuel D. Hodge, Jr., *The Implications of Legalized
   Marijuana on Establishing Probable Cause for a Warrantless Search*, 66 ST.
   LOUIS U. L.J. 267 (2022) ....................................................................................1

Michael Podgurski, *Cannabis, Cars, and Probable Cause*, 111 ILL. BAR J. 30
   (2023)................................................................................................................21

RONALD J. ALLEN ET. AL, CRIMINAL PROCEDURE: INVESTIGATION AND
   THE RIGHT TO COUNSEL 417 (3d ed. 2016) ....................................................16

Richard L. Doty et al., *Marijuana Odor Perception: Studies Modeled From
   Probable Cause Cases*, 28 LAW & HUM. BEHAV. 223, 227 (2004) ..................23

WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE
   FOURTH AMENDMENT § 3.1(a) (6th ed. 2022)................................................16

## INTRODUCTION

For decades, courts have ruled that police have probable cause to search vehicles based solely on the odor of marijuana. *See* Lauren Williams & Samuel D. Hodge, Jr., *The Implications of Legalized Marijuana on Establishing Probable Cause for a Warrantless Search*, 66 St. Louis U. L.J. 267, 268 (2022). But much has changed in recent years. In 2018, Congress legalized certain recreational hemp products nationwide. *See* Agriculture Improvement Act of 2018, H.R. 2, 115th Cong. § 12619. States around the country—including Illinois—have legalized the possession of recreational marijuana. *See* Williams & Hodge, *supra*, at 272 ("Currently, medical marijuana is legal in thirty-seven states and the District of Columbia, and marijuana is legal for recreational purposes in nineteen of those jurisdictions."). In case after case—including this one— the Federal Government has refused to rely on the federal marijuana ban to support probable cause.

In Illinois and other states, the changes in marijuana regulation "have compelled the examination of how the affected laws are to be interpreted and applied consistent with the dictates of … the Fourth Amendment's protection against unreasonable searches and seizures." *Pacheco v. State*, 465 Md. 311, 317 (2019). Recognizing as much, this Court recently reserved the question of how the probable-cause standard applies to marijuana "in a state that permits medical marijuana, or a state that has legalized marijuana possession across-the-board." *United States v. Paige*, 870 F.3d 693, 700 n.19 (7th Cir. 2017). This case presents that reserved question.

Officer Phillip Barrie searched appellant Prentiss Jackson's car, claiming to smell "a little bit of weed." RSA 2.[1] As it turned out, Mr. Jackson's glove compartment contained a miniscule two grams of unburnt marijuana in a sealed plastic bag. The District Court upheld that search,

---

[1] Material in the Required Short Appendix bound with this brief is cited as RSA __. Material in the Supplemental Appendix is cited as SA __. Entries to the District Court's docket are cited as ECF No. __.

relying solely on an Illinois statute requiring those transporting recreational marijuana in a vehicle to do so in an odorless container. *Id.* at 9 (finding "probable cause" only "for that offense").

Officer Barrie, however, did not have probable cause to believe Mr. Jackson was unlawfully transporting marijuana. To start, it is simply not plausible that Officer Barrie could smell such a small amount of unburnt marijuana—which has a substantially weaker smell than burnt marijuana—sealed within a plastic bag inside a glove compartment. His lack of narcotics experience and training only reinforces the implausibility of his claim to smell unburnt marijuana.

But even assuming Officer Barrie had the claimed extraordinary ability to smell "a little bit of weed," *id.* at 2, he still lacked probable cause. In Illinois, the mere odor of marijuana is consistent with a wide range of *lawful* activities. Perhaps Mr. Jackson or his passenger had consumed a lawful amount of marijuana earlier in the day—as Mr. Jackson told the officer he had. Or maybe Mr. Jackson or his passenger had recently visited a cannabis shop or attended a social gathering where people legally smoked or otherwise consumed marijuana. Or Mr. Jackson could have been transporting federally *legal* hemp-based products, which are *not* subject to Illinois' odorless container law, see *infra* at 5–6, and which are "so similar in appearance and smell" to raw cannabis "that even drug detection dogs can't tell the difference." *State v. Moore*, 991 N.W.2d 412, 421 (Wis. 2023) (Dallet, J., dissenting). In other words, there are multiple innocent explanations for what Officer Barrie claimed to smell.

When there "are plausible innocuous explanations" for what police observe, an officer lacks probable cause unless he can point to some *corroboration* suggestive of unlawful activity. *Lewis v. State*, 233 A.3d 86, 95 (Md. 2020). The Supreme Court has applied that principle in various contexts—looking to corroborating evidence even when confidential informants or drug-sniffing dogs are used to support probable cause. Indeed, without that requirement, it is hard to

see what separates probable cause—a fundamental Fourth Amendment protection—from the substantially more relaxed reasonable-suspicion standard.  It is therefore unsurprising that most Illinois appellate courts and a host of courts in other States have held that, in our new era of legalized cannabis and hemp, police lack probable cause to conduct searches and seizures for marijuana-related offenses based solely on the odor of marijuana.  *See infra* at 19–22.

Here, Officer Barrie had no corroborating evidence to suggest Mr. Jackson was illegally transporting marijuana.  All agree he saw no cannabis buds, residue, smoke, paraphernalia, or containers.  During the relevant part of the stop, Mr. Jackson and his passenger behaved normally, were "cooperative," and gave "appropriate" answers to his questions.  SA 44, 53.  All Officer Barrie had to go on was a claimed odor and a hunch.

The probable-cause standard demands more.  Because Officer Barrie unlawfully searched Mr. Jackson's car and consequently discovered incriminating evidence, this Court should reverse the District Court's denial of the motion to suppress.

Alternatively, if this Court finds the probable-cause question to be close, it should remand. The District Court failed to analyze probable cause at the relevant moment in the stop, upholding Officer Barrie's search of Mr. Jackson's car based only on reasonable suspicion.  *See* RSA 8–9 (applying reasonable-suspicion standard, then concluding probable cause was established only after Mr. Jackson turned over marijuana in response to threatened search and demand for cooperation).  The District Court even acknowledged that this would be a difficult case if the probable-cause standard applied.  *Id.* at 7–8.  But that standard does apply.  And because probable cause is a fact-sensitive inquiry—one the District Court is best positioned to assess based on witness credibility and other factual matters—a remand could be appropriate.

3

## JURISDICTIONAL STATEMENT

**No. 23-1721**:  This is an appeal from a final judgment in a criminal case under 18 U.S.C. § 922(g)(1).  The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231 because it involved a federal crime.  Mr. Jackson entered a conditional guilty plea, reserving his right to appeal the District Court's denial of his motion to suppress.  *See* ECF No. 27.  After the District Court announced its judgment and sentence on April 10, 2013, Mr. Jackson filed a timely notice of appeal on April 11, 2023.  *See* ECF No. 40.  This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of the District Court.

**No. 23-1708**:  This is an appeal from a revocation of supervised release that followed from the conviction at issue in No. 23-1721.  The District Court retained jurisdiction under 18 U.S.C. § 3231 because Mr. Jackson was serving a sentence issued following a judgment of conviction for a federal offense.  The District Court revoked supervised release on April 13, 2023, and Mr. Jackson filed a timely notice of appeal the same day.  *See* ECF No. 131.  This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of the District Court.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether Officer Barrie had probable cause to search Mr. Jackson's vehicle based solely on his claim that he smelled "a little bit of" unburnt marijuana.

2.    Whether this Court should remand the necessary probable-cause determination to the District Court, which failed to assess probable cause at the correct moment during the stop.

## STATEMENT OF THE CASE

### I.     Marijuana Legalization in Illinois

Illinois's marijuana laws have shifted rapidly in recent years.  Illinois first criminalized marijuana in 1931.  *See People v. Stribling*, No. 3-21-0098, 2022 WL 4299289, at *2 (Ill. App. Ct. 3d Dist. Sept. 19, 2022).  During the twentieth century, many Fourth Amendment cases involving marijuana were decided when possession or consumption of any amount of marijuana was unlawful.  *See id.* at 3.

In 2013, the Illinois General Assembly partially legalized medical marijuana in the Medical Act.  *See* 410 Ill. Comp. Stat. 130/1 (West 2014).  Under that law, medical caregivers could certify that an individual had a qualifying medical condition that could legally be treated with marijuana.  *See Stribling*, 2022 WL 4299289, at *3.  In 2016, the General Assembly decriminalized the possession of fewer than 10 grams of marijuana by redefining such possession as a civil violation.  720 Ill. Comp. Stat. 550/4(a) (West 2016); *see Stribling*, 2022 WL 4299289, at *3.

Another important change occurred in 2018, when Congress removed certain hemp-based products from the controlled substances list.  *See* Agriculture Improvement Act of 2018, H.R. 2, 115th Cong. § 12619.  Following its lead, Illinois legalized the in-state production of hemp in 2019.  *See* 505 Ill. Comp. Stat. 98/1 *et. seq.*  And in May 2022—the month before Mr. Jackson was pulled over—Illinois stopped treating federally lawful hemp as "cannabis" under state law.[2] *See* 410 Ill. Comp. Stat. Ann. 705/1-10.  As of that date, Illinois and the Federal Government defined hemp in the same way—with "both deriv[ing] from the cannabis sativa species" but hemp

---

[2] The terminology can get confusing. What Illinois statutes refer to as "cannabis" is equivalent to what federal law calls "marijuana."  Both must have more than 0.3% delta THC.  *Compare* 21 U.S.C. § 802(16) (defining "marijuana" to exclude "hemp"), *and* 7 U.S.C. § 1639o(1) (defining hemp), *with* 410 Ill. Comp. Stat. Ann. 705/1-10 (defining cannabis), *and* 505 Ill. Comp. Stat. Ann. 89/5 (defining hemp). This brief thus uses the terms "marijuana" and "cannabis" interchangeably.

containing no more than 0.3% THC, the intoxicating ingredient in cannabis. *Industrial Hemp*, Illinois Department of Agriculture (last visited Sept. 16, 2023); *see* 410 Ill. Comp. Stat. Ann. 705/1-10 ("'Cannabis' does not include industrial hemp as defined and authorized under the Industrial Hemp Act."); 505 Ill. Comp. Stat. Ann. 89/5 ("'Hemp' or 'industrial hemp' means the plant Cannabis sativa L. and any part of that plant . . . with a delta-9 [THC] concentration of not more than 0.3 percent . . . ."). Therefore, many popular hemp-based products—including hemp-derived gummies, oils, creams and hemp flowers—were legal to possess under both Illinois and federal law at the time Mr. Jackson was pulled over.

The most important change arrived in June 2019, when the General Assembly expressly legalized the possession of small amounts of cannabis for recreational use through the Cannabis Regulation and Tax Act. *See* Pub. Act 101-27 (adding 410 Ill. Comp. Stat. 705/10-35(a)(2)(D)). State law now permits "an Illinois resident 21 years of age or older" to "possess up to and including 30 grams of cannabis, up to 500 milligrams of tetrahydrocannabinol (THC) in a cannabis-infused product, and 5 grams of cannabis concentrate." *Stribling*, 2022 WL 4299289, at *4.

The legislature also addressed the transportation of "cannabis" in vehicles. The 2019 Cannabis Act expressly allows individuals to possess "cannabis" in vehicles if it "is in a reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving." 410 Ill. Comp. Stat. 705/10-35(a)(2)(D). Bizarrely, however, the General Assembly simultaneously amended the vehicle code to permit the same activity under seemingly different rules: allowing cannabis in vehicles but only "in a sealed, *odor-proof*" container. 625 Ill. Comp. Stat. 5/11-502.1 (emphasis added). Thus, while one provision of Illinois law seemingly allows marijuana to be transported in *any* sealed container, another requires storage in *odorless* containers. As a result, "Illinoisans are in the dark" over the precise state of the law. Claire J. Rice, *Failing the Sniff Test: Using*

*Marijuana Odor to Establish Probable Cause in Illinois Post-Legalization*, U. CHI. L. REV. ONLINE (Sep. 23, 2022).  Notably, however, the vehicle code's odorless-container rule applies only to "cannabis" and *not* to hemp-based products.  *See* 410 Ill. Comp. Stat. Ann. 705/1-10 ("'Cannabis' does not include industrial hemp as defined and authorized under the Industrial Hemp Act.").

## II.   The Stop

On June 11, 2022, Mr. Jackson was driving with a friend in Urbana, Illinois.  He was tailed by Officer Phillip Barrie of the Urbana Police Department.  Officer Barrie's dash camera footage shows that Mr. Jackson was not driving erratically.  But Mr. Jackson was driving without his lights on—a violation of the Illinois traffic code.  *See* 625 Ill. Comp. Stat. 5/12-201.

Officer Barrie activated his emergency lights and Mr. Jackson promptly pulled over.  *See* SA 23 (acknowledgment by Officer Barrie that Mr. Jackson "pull[ed] over in an appropriate amount of time").  When Mr. Jackson lowered his window, Officer Barrie told him his lights were not on, and Mr. Jackson quickly turned on his lights.  RSA 2.  After Mr. Jackson acknowledged his mistake, Officer Barrie said "You're good. I have no problem with giving you guys a warning." ECF No. 21, Ex. 1 [Video] at 1:13-17.  Officer Barrie asked Mr. Jackson to turn over his identification and insurance information—which he promptly did.  *See id.*  Officer Barrie later acknowledged that, throughout this phase of the stop, Mr. Jackson understood the questions and his responses were "appropriate."  SA 28.

After quickly reviewing Mr. Jackson's documents—but without returning to his car or writing a traffic ticket, *see* SA 38—Officer Barrie pivoted to marijuana.  He told Mr. Jackson he "smelled a little bit of weed."  RSA 2.  He then asked Mr. Jackson and his companion if they had been smoking marijuana.  *Id.*  Mr. Jackson candidly told Officer Barrie he had smoked earlier in

the day, but that he had not done so in the car.  *Id.*  He also told Officer Barrie there was no cannabis in the vehicle.  SA 13.  Officer Barrie then told Mr. Jackson he would write him a warning ticket.  *See* RSA 2.  Notably, Officer Barrie later testified that, throughout this first part of the stop, he did not observe Mr. Jackson "acting strange[ly]" and that Mr. Jackson did not slur his words.  SA 24, 29.  He also admitted that he saw no evidence of marijuana smoke, marijuana-related products, or drug paraphernalia inside Mr. Jackson's car.  *Id.* at 27.

Nevertheless, Officer Barrie told Mr. Jackson "the car would be searched because of the cannabis odor."  RSA 2; *see also* SA 12–13 ("I told him that I was going to search him and the vehicle and asked—told him that I was going to start with him and asked him to step out of the motor vehicle."); Video at 3:00-10 ("I'm going to search you and the vehicle.").  Officer Barrie also demanded Mr. Jackson turn over his car keys.  RSA 2.  After Officer Barrie "confiscat[ed] [the] keys," SA 12–13, he told Mr. Jackson he would be able to "cut breaks," but only if Mr. Jackson cooperated "up front."  RSA 2; Video at 3:10-20.  When Mr. Jackson's passenger asked why the car would be searched, Officer Barrie said: "Cannabis is legal in the State of Illinois, but it is illegal to have in the confines of a vehicle."  *Id.* at 4:00-10.  When Mr. Jackson's passenger questioned that assertion, Officer Barrie threatened to arrest them for refusing to submit to a "probable-cause search."  *Id.* at 4:15-25.

Mr. Jackson responded to that threat by turning over a "small", sealed "Ziploc baggie" containing about "2 grams" of unburnt cannabis.  SA 42.  Officer Barrie then ordered Mr. Jackson to get out of the car.  *See* RSA 2.  Mr. Jackson "calmly walked to the back of the vehicle," and placed his hands on the trunk.  SA 15.  Mr. Jackson then attempted to flee the scene.  While running, "[a] firearm fell from [Mr. Jackson's] waistband to the ground as [Mr. Jackson] tripped."  RSA 3.  Mr. Jackson was then arrested.

### III.     Procedural History

Because Mr. Jackson had prior drug-related felonies on his record, the United States charged him with unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1).

Mr. Jackson moved to suppress the Government's only evidence: the firearm the police recovered following Officer Barrie's actions during the stop. Mr. Jackson argued that Officer Barrie was unjustified in extending the stop to investigate marijuana, lacked probable cause to search the car, and lacked probable cause to seize his keys. *See* ECF No. 17 at 4–5. The Government argued that Mr. Jackson's "primary argument that the smell of marijuana from a car cannot provide probable cause to search is incorrect." ECF No. 20 at 3. Notably, the Government relied *only* on state-law offenses to justify probable cause. *See id.* at 4–5. It did not rely on the federal marijuana statutes in either its suppression brief or at the suppression hearing.

The District Court held an evidentiary hearing, at which Officer Barrie was the only witness. Officer Barrie testified that he had been a police officer for only "three years" and had been a traffic "patrol officer the entire time." SA 5–6. As for narcotics training, Officer Barrie testified to one session at the police academy where officers were "allow[ed]" to "smell unburnt cannabis" and a "small amount of [burnt] cannabis." *Id.* at 45. He also testified, without much detail, that he received a similar training at the police department. *Id.* at 46.

Following the hearing, the District Court rejected the motion to suppress. The District Court focused on whether Officer Barrie had reasonable suspicion to extend the scope of the traffic stop to investigate marijuana-related offenses. *See* RSA 5–8. Acknowledging that Illinois's legalization of recreational marijuana posed difficult Fourth Amendment questions under a probable-cause standard, the District Court sidestepped those issues. *See id.* at 7–8 ("Fortunately,

this court need not weigh in on that particular issue."). It did so by concluding the reasonable-suspicion standard governed the legality of Officer Barrie's decision to extend the traffic stop to investigate marijuana-related offenses and his seizure of Mr. Jackson's keys. *See id.* at 8, 12.

The District Court then found that Officer Barrie had reasonable suspicion at the time he probed marijuana-related offenses and seized Mr. Jackson's keys. *See id.* The District Court reasoned that the scent of marijuana gave officer Barrie reasonable suspicion to believe Mr. Jackson had violated Illinois's odorless-container requirement. *See id.* at 8.[3] Notably, the District Court found that probable cause existed only *after* Mr. Jackson turned over improperly stored marijuana. *Id.* at 9. It did not acknowledge the fact that Officer Barrie obtained such evidence only by announcing that he would search the car, threatening arrest, and demanding cooperation.

Mr. Jackson filed a timely notice of appeal.

## SUMMARY OF THE ARGUMENT

The key moment in this case occurred when Officer Barrie told Mr. Jackson he would search his car and demanded cooperation. At that moment, the Fourth Amendment barred Officer Barrie's search unless he had probable cause to believe Mr. Jackson had violated Illinois's prohibition on transporting marijuana without an odorless container. *See, e.g.*, *Carroll v. United States*, 267 U.S. 132, 159–60 (1925).

---

[3] Officer Barrie testified that he also suspected Mr. Jackson of driving under the influence. However, he did not reference such suspicion in his police report. And for good reason: The record reveals that Mr. Jackson was not driving under the influence. Officer Barrie's dash camera shows that Mr. Jackson was not driving erratically. And Officer Barrie testified that Mr. Jackson was "alert," understood and responded to questions, and did not slur his words. *See* SA 32–33. And there was no evidence of *any* marijuana products, smoke, or paraphernalia in plain view. *Id.* at 33. Even after Officer Barrie arrested Mr. Jackson, he did not conduct any field sobriety testing. *See id.* at 18. Unsurprisingly, the District Court did not rely on Illinois's impaired driving statute to uphold Officer Barrie's initial investigation of marijuana-related offenses. *See* RSA 6 (discussing factors that "undermined" DUI suspicion). And while the District Court believed Officer Barrie could have probed whether Mr. Jackson was driving under the influence after he admitted to smoking earlier in the day, he did not but instead immediately moved to search Mr. Jackson's car. *See id.* at 12. In any event, the District Court's only *probable-cause* holding relied on Illinois's odorless-container law. *See id.* at 9.

But he did not.  Officer Barrie's only basis for searching Mr. Jackson's car was his claim that he smelled "a little bit of weed," RSA 2—and he later claimed to have smelled two grams of unburnt cannabis in a sealed Ziploc bag in the glove compartment.  *See* SA 42.  This claim is not plausible.  A miniscule two grams of unburnt cannabis—which has a much weaker smell than burnt marijuana—does not give off a meaningful odor.  Moreover, Officer Barrie simply did not possess adequate experience, expertise, or training to be sufficiently confident he smelled unburnt marijuana.  He had only three years' experience as a police officer, focused on traffic enforcement instead of narcotics, and reported only two training sessions in which he smelled marijuana.  Such training inspires no confidence that Officer Barrie could reliably detect a small amount of unburnt cannabis stored in a sealed plastic bag inside the glove compartment.  In concluding Officer Barrie smelled unburnt marijuana, the District Court committed clear error.

Even assuming Officer Barrie had a reliable basis for concluding he smelled unburnt cannabis, that by itself did not supply probable cause because it was easily explained by a host of "innocent" behaviors.  *Stribling*, 2022 WL 4299289, at *5; *see also, e.g.*, *People v. Brukner*, 25 N.Y.S. 3d 559, 571 (City Court 2015) ("An odor of stale or burnt marijuana on clothing, without more, is equally susceptible to [an] innocent non-criminal explanation.").  Mr. Jackson or his companion could have just come from a cannabis shop or a party where marijuana was lawfully consumed, and the smell may have lingered on their clothes.  Or Officer Barrie may have smelled hemp-based products not subject to Illinois's odorless-container law.  Those products, legal under both federal and state law, "are so similar in appearance and smell" to raw cannabis "that even drug detection dogs can't tell the difference."  *Moore*, 2023 991 N.W.2d at 421 (Dallet, J., dissenting); *see* Cynthia A. Sherwood et al., *Even Dogs Can't Smell the Difference: The Death of "Plain Smell," as Hemp is Legalized*, 55 TENN. B.J. 14, 15 (2019) ("[T]he premise of plain smell

11

is now bankrupt."). The police may not need to consider such plausible innocent explanations when they need only reasonable suspicion, *see Kansas v. Glover*, 140 S. Ct. 1183, 1187-88 (2020), but probable cause generally requires an officer to possess corroborating evidence to substantiate his suspicion of wrongdoing. *See, e.g.*, *Florida v. Harris*, 568 U.S. 237, 247 (2013); *see infra* at 17–22. Otherwise, it is hard to see what differentiates reasonable suspicion from probable cause.

Here, there was no corroborating evidence to bolster Officer Barrie's hunch that Mr. Jackson had violated the odorless-container law. *Cf. People v. Zuniga*, 372 P.3d 1052, 1059–60 (Colo. 2016) (finding probable cause based on cannabis odor combined with several corroborating factors). Indeed, Officer Barrie testified that he saw no evidence of marijuana in the car, and acknowledged that Mr. Jackson and his passenger behaved normally, were "cooperative," and responded "appropriate[ly]" to his questions during the stop. *Supra* at 7–8.

In cases like this one, the majority of Illinois appellate courts and many other state courts in jurisdictions that have legalized marijuana under certain circumstances have held that the mere odor of cannabis does not provide probable cause to conduct searches or seizures for cannabis-related offenses. *See*, *e.g.*, *Lewis*, 233 A.3d at 91 ("[T]he odor of marijuana, without more, does not provide law enforcement officers with the requisite probable cause to arrest and perform a warrantless search that person incident to the arrest."); *see infra* at 19–22. Meanwhile, this Court recently reserved judgment on how the probable-cause standard applies to a police officer's claim to smell marijuana "in a state that permits medical marijuana, or a state that has legalized marijuana possession across-the-board." *Paige*, 870 F.3d at 700 n.19. This Court should adopt the majority rule and hold that Officer Barrie lacked probable cause.

But if this Court thinks the probable-cause question is close, it should remand that question to the District Court. The District Court failed to analyze the dispositive legal question in this

case: whether there was probable cause at the moment Officer Barrie told Mr. Jackson he would

search his car.  Instead, the District Court found that probable cause existed only *after* Mr. Jackson

turned over incriminating evidence of improperly stored marijuana *in response* to Officer Barrie's

threat.  *See* RSA 5.  "[T]he resolution of a motion to suppress" is a "fact-intensive inquiry" in

which a district court must make "credibility determinations" based on "its opportunity at the

suppression hearing to hear the testimony and observe the demeanor of the witnesses."  *United

States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005).  Giving the District Court the chance to assess

probable cause, at the correct time, in the first instance would be appropriate.

## STANDARD OF REVIEW

"When a criminal defendant appeals the district court's denial of a motion to suppress, [this

Court] review[s] both legal conclusions and mixed questions of law and fact *de novo*."  *United

States v. Bentley*, 795 F.3d 630, 633 (7th Cir. 2015). In particular, this Court must review the

District Court's probable-cause determinations *de novo*.  *Ornelas v. United States*, 517 U.S. 690,

691 (1996).  But the factual determinations underlying any probable-cause holding are uniquely

within the District Court's competence, and this Court reviews those findings for clear error.  *See

United States v. Eymann*, 962 F.3d 273, 281 (7th Cir. 2020).

## ARGUMENT

Much here is not in dispute.  All agree Officer Barrie had probable cause to stop Mr.

Jackson for driving without his lights on.  And all agree Officer Barrie had the right to investigate

and ticket Mr. Jackson for the traffic violation.  But Officer Barrie was far more interested in

investigating marijuana-related offenses than the traffic laws—as shown by his pivot to marijuana-

focused questions without even writing up a traffic ticket.  All agree Officer Barrie needed to have

reasonable suspicion to ask those questions.  *See* RSA 5.  And in this appeal, Mr. Jackson does not

challenge Officer Barrie's reasonable suspicion to ask whether Mr. Jackson had smoked marijuana in the car.  Those questions, all agree, prompted Mr. Jackson's candid admission that he had smoked earlier in the day, but not in the car.

All that takes us to the crucial Fourth Amendment moment.  Officer Barrie told Mr. Jackson that, because he claimed to smell "a little bit of weed", he would search the car.  Simultaneously, he seized Mr. Jackson's keys.  RSA 2; *supra* at 8.  Officer Barrie also demanded cooperation with the search, promised Mr. Jackson would get lenient treatment only if he complied, and threatened to arrest Mr. Jackson if he resisted his "probable-cause" search.  *See supra* at 8.  That declaration that he was going to search Mr. Jackson's car—especially when combined with the seizure of the keys, the demand for cooperation during the search, and the threatened arrest—triggered the Fourth Amendment's probable-cause obligation.  But because Officer Barrie did not have probable cause to believe that Mr. Jackson had committed any crime, the search was unlawful.

Accordingly, the fruits of that search should have been excluded, and the District Court's contrary decision should be overturned for three reasons.  First, the District Court failed to recognize that Officer Barrie's search of Mr. Jackson's car required probable cause, instead upholding the search under the relaxed "reasonable suspicion" standard.  Second, under the proper standard, Officer Barrie's search of Mr. Jackson's car was unlawful because he did not have probable cause.  And third, at the very least, if there is any doubt that probable cause was lacking, this Court should remand for the District Court to address that question in the first instance.

## I.     Officer Barrie's Search of Mr. Jackson's Car Required Probable Cause.

The Fourth Amendment prohibits "unreasonable searches and seizures" of people or property.  U.S. Const. amend. IV.  "The basic purpose of this Amendment … is to safeguard the

privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (internal quotation marks omitted).

The Fourth Amendment protects Americans' privacy- and property-based interests in their automobiles. *See, e.g.*, *Carroll*, 267 U.S. at 159–60. Absent consent, the police cannot search an automobile without probable cause. *See, e.g.*, *id.*; *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (*per curiam*). Faithful enforcement of the probable-cause standard is especially important in the traffic-stop context because the police need not obtain a warrant to search a car stopped on the road. *See id.* at 940. As such, probable cause is the *only* Fourth Amendment protection for motorists and a critical bulwark against state intrusion. *See, e.g.*, David A. Sklansky, *Traffic Stops, Minority Motorists, and the Future of the Fourth Amendment*, 1997 SUP. CT. REV. 271, 272.

A search of Mr. Jackson's car occurred when Officer Barrie said he would search the car, demanded cooperation with the search, and threatened to arrest Mr. Jackson if he did not comply with his "probable-cause search." Video at 4:15-25. Faced with the demand for cooperation and the threat of arrest, Mr. Jackson had no choice but to turn over the plastic bag with two grams of cannabis. *Cf. Bumper v. North Carolina*, 391 U.S. 543, 549 (1968) (holding search of house occurred where resident turned over incriminating evidence in response to officer falsely claiming to have a warrant and demanding cooperation); *Commonwealth v. Cruz*, 945 N.E. 2d 899, 903-04, 912 (Mass. 2011) (holding probable cause applied when police ordered driver out of car, made clear they would search suspect's person, and suspect surrendered contraband on his person). The fact that Officer Barrie also seized Mr. Jackson's keys reinforced that he had no choice but to submit to the search. *Cf. See v. City of Seattle*, 387 U.S. 541, 544-45 (1967) (making clear Fourth Amendment applies to administrative subpoenas, "which ha[ve] been termed a 'constructive' search" (citation omitted)); *Boyd v. United States*, 116 U.S. 616, 622 (1886) (making clear that

law enforcement's demand for "a man's private papers" "is equivalent" to "a search and seizure" under the Fourth Amendment). Indeed, Officer Barrie himself apparently understood that his actions constituted a search, as his testimony repeatedly referred to his actions as a "search of [Mr. Jackson] and the vehicle" and a "probable-cause search." SA 12; *see id.* at 13; Video at 4:15-25.[4] Probable cause was thus required at that moment. *United States v. Ross*, 456 U.S. 798, 823 (1982).

The District Court, however, analyzed probable cause at the wrong moment in time. The District Court concluded that probable cause existed *after* Mr. Jackson turned over the plastic bag of marijuana. *See* RSA 9. But Mr. Jackson turned over that crucial evidence only *because* Officer Barrie effectuated a search—which occurred when he told him Mr. Jackson that he would search the car, seized his keys, threatened to arrest him, and demanded cooperation. Officer Barrie needed probable cause at *that* moment—based on what he had seen up until that point. But the District Court neglected that question, focusing instead on whether Officer Barrie had reasonable suspicion to ask about marijuana-related offenses. *See id.* at 5–8. The District Court thus erred by failing to apply the probable-cause standard at the proper time.

---

[4] Even if Officer Barrie had not told Mr. Jackson he would search the car and demanded cooperation in the search, probable cause was still required due to the seizure of Mr. Jackson's keys. Probable cause is the "presumptive" standard to assess searches and seizures under the Fourth Amendment. RONALD J. ALLEN ET. AL, CRIMINAL PROCEDURE: INVESTIGATION AND THE RIGHT TO COUNSEL 417 (3d ed. 2016); *see also* WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.1(a) (6th ed. 2022). And no decision from either the Supreme Court or this Court has departed from the probable-cause standard for situations where the police seize car keys—unquestionably property belonging to Mr. Jackson.

In holding otherwise, the District Court relied on two out-of-circuit district court decisions and on Supreme Court cases involving issues of officer safety. See RSA 11. But there is no evidence that Officer Barrie feared for his safety at the relevant times during the stop. And even if he did, Officer Barrie could have simply ordered Mr. Jackson out of his car. See *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). In any event, the seizure of Mr. Jackson's keys—combined with Officer Barrie's threat to search his car, the demand for cooperation, and the threatened arrest—makes it unnecessary for this Court to determine whether the seizure of Mr. Jackson's keys alone required probable cause.

16

## II.     The Police Lacked Probable Cause to Search Mr. Jackson's Car.

At the relevant moment, Officer Barrie lacked probable cause to search Mr. Jackson's car. The District Court relied on only one offense to justify Officer Barrie's search: Illinois's law requiring individuals transporting marijuana in their vehicles do so in an "odor-proof … container."  RSA 9.  But under well-established Fourth Amendment principles, it is clear that Officer Barrie did not have probable cause to believe that Mr. Jackson was violating that law.[5] *First*, under the admitted circumstances where Mr. Jackson had a miniscule amount of marijuana in a sealed plastic bag in his glove box, it is implausible that Officer Barrie actually smelled *unburnt* marijuana, and the District Court clearly erred in finding otherwise.  It is virtually impossible for human smell to detect such a small amount of unburnt marijuana, making Officer Barrie's contrary claim implausible.  *Second*, even if Officer Barrie somehow did smell unburnt marijuana, that by itself would not be enough to establish probable cause of any criminal violation because it was consistent with many lawful explanations.  Since there was no corroborating evidence to suggest the commission of a crime, there was no probable cause even if Officer Barrie's incredible claim to have smelled unburnt marijuana were true.

### A.     When an officer observes plausibly innocent activity, probable cause generally requires corroborating evidence to substantiate his suspicion.

Under the Fourth Amendment's probable-cause standard, the police cannot search a vehicle unless they can point to evidence a "reasonable and prudent [person]" would conclude shows a "probability" of finding evidence of unlawful conduct.  *Illinois v. Gates*, 462 U.S. 213, 231, 235 (1983).  Although the probable-cause test is a "practical and common-sensical standard,"

---

[5] Whether the odorless-container statute was the law at the time Mr. Jackson was stopped is a contested question of Illinois law.  The Illinois Supreme Court recently agreed to review a case presenting that question.  *See People v. Molina*, No. 129327, 2023 WL 2751668 (Ill. Mar. 29, 2023).  If the Illinois Supreme Court rules that the odorless-container law did not survive the passage of the 2019 Cannabis Act, Mr. Jackson reserves the right to challenge the District Court's suppression ruling on that basis.

*Harris*, 568 U.S. at 244, it is considerably more demanding than reasonable suspicion. *See Glover*, 140 S. Ct. at 1187–88. And courts must strictly enforce the line between those two standards. "The history of the use, and not frequent abuse, of the power" to enforce the laws "cautions that a relaxation of the fundamental requirements of probable cause would leave law-abiding citizens at the mercy of the officers' whim or caprice." *Wong Sun v. United States*, 371 U.S. 471, 479 (1963) (internal quotation marks and citation omitted).

No one doubts that probable cause exists when police directly observe criminal conduct. *See, e.g.*, *Bentley*, 795 F.3d at 634. But things are more complicated when police view activity that is plausibly "innocent." *Texas v. Brown*, 460 U.S. 730, 746 (1983) (plurality); *see People v. Hill*, 162 N.E.3d 260, 266 (Ill. 2020) (explaining courts assessing probable cause must consider "the plausibility of an innocent explanation"). When observed conduct is consistent with both "innocent-seeming activity" and unlawful behavior, *corroborating evidence* is generally needed to establish probable cause. *Spinelli v. United States*, 393 U.S. 410, 413–14 (1969); *see District of Columbia v. Wesby*, 583 U.S. 48, 61-62 (2018) (explaining that police did not need to "rule out a suspect's innocent explanation for suspicious facts" only where other "circumstances … certainly suggested criminal activity").

For example, where police rely on an informant to establish probable cause, the Supreme Court has required some type of corroboration. *See Gates*, 462 U.S. at 241 ("Our decisions … have consistently recognized the value of corroboration of details of an informant's tip by independent police work."). In *Gates,* for example, the Court found that an informant's tip supplied probable cause because it was corroborated by "an independent investigation" suggesting the defendant's "involve[ment] in drug trafficking" and suspicious travel activities. *Id.* at 243–44.

Similarly, where police rely on drug-sniffing dogs, the Supreme Court has explained that the government should "produce[] proof from controlled settings that a dog performs reliably in detecting drugs." *Harris*, 568 U.S. at 247-248.  In *Harris*, the Court found that a drug-sniffing dog's positive alert provided probable cause where the State proved the dog at issue "successfully completed a 120-hour program in narcotics detection," "obtained a certification from an independent company," completed another "40-hour training program," and engaged in "exercises designed to keep [its] skill[s] sharp" "for four hours each week." *Id.* at 248.

Notably, the rule might be different under the reasonable-suspicion standard: at least some cases suggest police do not need to rule out innocent explanations before continuing to investigate. *Glover*, 140 S. Ct. at 1187–88.  After all, "[b]ecause it is a 'less demanding' standard, 'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause.'" *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

Numerous courts—both in Illinois and in other States where cannabis is legal—have applied traditional probable-cause principles and held that the mere scent of marijuana, without "corroborating factors," does *not* provide probable cause to search a vehicle for marijuana-related offenses.  *People v. Redmond*, 207 N.E. 3d 1175, 1180 (Ill. App. Ct. 3d Dist. 2022), *appeal allowed* 463 Ill. Dec. 630, 2023 WL 2749120 (Mar. 29, 2023); *see, e.g.*, *State v. Torgerson*, A22-0425, 2023 WL 5944620 at *1 (Minn. Sept. 13, 2023) (finding "that the odor of marijuana emanating from a vehicle, alone, is insufficient to create the requisite probable cause to search a vehicle"); *Commonwealth v. Barr*, 266 A.3d 25, 28 (Pa. 2021) ("We hold that the smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle."); *State v. Clinton-Aimable*, 232 A.3d 1092, 1101–03 (Vt. 2020); *People v. Trone*, No. B294933,

2021 WL 1205194, at *7 (Cal. Ct. App. Mar. 30, 2021); *State v. T.T.*, 479 P.3d 598, 610 (Or. Ct. App. 2021); *Commonwealth v. Overmyer*, 11 N.E. 3d 1054, 1055 (Mass. 2014) (holding that the "odor of unburnt marijuana . . . standing alone, does not provide probable cause to search an automobile"); *Cruz*, 945 N.E. 2d at 913-914 (finding that, post-decriminalization, the odor of burnt cannabis did not support probable cause).  In states that have legalized marijuana, courts usually "apply a totality of the circumstances approach" that demands corroboration beyond odor alone— like "suspicious conduct by a car's occupant," "other indications of carrying narcotics," and "the training or expertise of the officer."  Williams & Hodge, *supra*, at 278.[6]

For example, in *Stribling,* an officer stopped the defendant for committing various traffic violations shortly after the 2019 Cannabis Act went into effect.  2022 WL 4299289, at *1.  While approaching the vehicle, the police officer detected "a strong odor of burnt cannabis emitting from inside," and the driver said that someone smoked in the vehicle "a long time ago."  *Id.*  Based on that evidence, the officer searched the car and found an unlawful firearm.  *Id.*  But the trial court suppressed the firearm, and the Appellate Court of Illinois affirmed.  The court concluded that the police lacked probable cause to believe Stribling was smoking in the car because the police did not "see any marijuana or drug paraphernalia" and "defendant's demeanor [did not] show that he was hiding anything."  *Id.* at *5.  As for the smell, the court reasoned it could be explained by lawful behavior—for instance, it "may have lingered in the defendant's car or on his clothing."  *Id.*

---

[6] Notably, Illinois is not a State that has merely *decriminalized* cannabis; the General Assembly has decreed that possession of certain amounts for recreational purposes is *lawful*. *See* Cece White, *Comment, The Sativas and Indicas of Proof: Why the Smell of Marijuana Should Not Establish Probable Cause for a Warrantless Vehicle Search in Illinois*, 53 UIC JOHN MARSHALL L. REV. 187, 203–04 (2020) (discussing decriminalization jurisdictions).  Nor is it a State in which the public possession of marijuana is legal only in a small range of circumstances; the analysis may differ in those States. *See, e.g.*, *State v. Sisco*, 373 P.3d 549, 555 (Ariz. 2016) (noting Arizona's "general prohibition against marijuana possession" and holding odor provides probable cause "unless other facts" indicate use is permitted).

In summary, the court held that "the smell of burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search a vehicle" in Illinois.  *Id.* at *6.

Another Illinois appellate court issued effectively the same ruling in *Redmond*, 207 N.E. 3d at 1180.  As in *Stribling*, the court relied on the rule that, "without any corroborating factors," the smell of cannabis "is not enough to establish probable cause to search [a] vehicle."  *Id.* at 1180 (internal quotation marks and citation omitted).  The court also reasoned that prior state-law precedents finding probable cause based on the smell of cannabis were abrogated by the 2019 Cannabis Act.  *See id.* at 1179 ("[T]hose cases are no longer applicable.").[7]

 That does not mean marijuana odor is *irrelevant* to the probable-cause analysis in states like Illinois.  As the Colorado Supreme Court explained, "the detection of a marijuana odor— particularly a 'heavy' odor—still adds to the totality of the circumstances and can contribute to a probable cause determination" in jurisdictions that have legalized the possession of particular amounts of cannabis under certain circumstances.  *Zuniga*, 372 P.3d at 1060; *accord Torgerson*, 2023 WL 5944620, at * 8 (adopting *Zuniga* approach in Minnesota).  But still, the mere smell of marijuana is consistent with a "possible innocent explanation," which "may impact the weight given to [that] particular fact in a probable cause determination."  *Zuniga*, 372 P.3d at 1059.  And in finding probable cause, *Zuniga* emphasized several pieces of evidence that corroborated the

---

[7] One Illinois appellate court has disagreed with the rulings in *Stribling* and *Redmond*. *See People v. Molina*, 208 N.E.3d 579 (Ill. App. Ct. 2022).  There, the officer claimed to smell unburnt cannabis and the government relied on Illinois's odorless-container law to support probable cause.  *Id.* at 1041–42.  On that basis, the court concluded that "an officer who smells cannabis in a vehicle that has just stopped is almost certain to discover a violation of the Vehicle Code."  *Id.* at 588.  The court also rejected consideration of innocent explanations for the odor of unburnt cannabis.  *Id.* at 589.  That said, the Government cannot put much weight on *Molina* because the Illinois Supreme Court granted the defendant's request to review the decision.  *See Molina*, 2023 WL 2751668, at *1 (Ill. 2023) (granting petition for leave to appeal and consolidating case with *People v. Redmond*); *see also* Michael Podgurski, *Cannabis, Cars, and Probable Cause*, 111 ILL. BAR J. 30, 34 (2023) (arguing *Molina* misapplied Illinois Supreme Court precedent); White, *supra*, at 222 (arguing that Illinois Supreme Court should hold that smell of cannabis alone does not support probable cause) .

officer's suspicion of unlawful activity "under the totality of the circumstances." *Id.* In particular, the defendant and the driver gave "remarkably disparate accounts" of their travels, exhibited "extreme nervousness," and a drug-sniffing dog detected marijuana. *Id.* at 1059–60.

The lesson from these cases is that, in States that have legalized cannabis possession, police will generally not have probable cause to search vehicles based solely on the odor of cannabis. Corroborating evidence is generally needed.

## B.     Officer Barrie lacked probable cause to believe Mr. Jackson was unlawfully transporting marijuana.

Under the foregoing rules, Officer Barrie lacked probable cause to believe Mr. Jackson violated Illinois's odorless container law when he told Mr. Jackson he would search his car. Consider what Officer Barrie had observed up to that point. During an interaction that lasted less than two minutes, Officer Barrie said he smelled "a little bit of weed." RSA 2. And when Officer Barrie asked why, Mr. Jackson told him he had smoked marijuana earlier in the day. *See id.*; *cf. Cruz*, 945 N.E. 2d at 904 (noting same fact). In his police report, written only after discovering a small amount of unburnt cannabis in Mr. Jackson's car, Officer Barrie claimed he specifically smelled *unburnt* cannabis. *See* SA 41 (admitting he "did not tell" Mr. Jackson he smelled unburnt cannabis).

That's it. The Government can point to just one officer's claimed ability to smell a tiny amount of *unburnt* marijuana. That is not enough to establish probable cause that Mr. Jackson was unlawfully transporting cannabis—for two reasons.

### 1.     Officer Barrie could not have smelled two grams of unburnt marijuana in a sealed plastic bag in the glovebox.

As a threshold matter, it is utterly implausible that Officer Barrie actually smelled two grams of unburnt cannabis, and the District Court clearly erred in finding otherwise. Unlike burnt cannabis, which has a "common and distinctive odor," United *States v. McCaster*, 466 Fed. App'x

443, 446 (6th Cir. 2011), *unburnt* cannabis has a substantially weaker smell. *See Cruz*, 945 N.E.2d at 908 n.15 (noting unburnt cannabis would need to be present in large quantities to omit a "strong odor"); *United States v. Randle*, No. 1:21-CR-32, 2022 WL 17038795, at *3 (N.D. Ind. 2022). That is why "decades of appellate cases discussing an officer smelling *raw* marijuana" have focused on corroborating evidence—like the officer's training and the "proximity to, and amount of, marijuana." *United States v. Gray*, 548 F.Supp.3d 807, 813 (S.D. Ind. 2021) (collecting cases). Otherwise, officers who conduct improper searches and discover small amounts of unburnt marijuana could always justify the search by implausibly claiming to have smelled it beforehand.

Here, the relevant factors foreclose a finding that Officer Barrie actually smelled the two grams of unburnt marijuana in Mr. Jackson's car. Let's start with quantity. "[A]n officer's claim that he smells raw marijuana [is] more believable when he is near lots of marijuana, and less so when he is far from small amounts." *Randle*, 2022 WL 17038795, at *3. But here, there were only *two grams* of unburnt cannabis in the vehicle—a tiny amount equivalent to a few small buds of cannabis and far below Illinois's legal limit. *Cf. United States v. Murry*, 844 F. App'x 39, 40 (10th Cir. 2021) (crediting claim to smell "a strong odor of raw marijuana" where "sixty-four pounds" were found); *United States v. Merryman*, 630 F.2d 780, 782-83 (10th Cir. 1980) (crediting officer's claim where "242 pounds" were found). Moreover, it was stored in a sealed plastic bag inside Mr. Jackson's glove compartment. *Cf. United States v. Pittman*, 782 Fed.Appx. 663, 666 (10th Cir. 2019) ("[P]ackaged marijuana might make it less likely that [an officer] smelled marijuana . . .")·. And Officer Barrie would have needed to smell that small amount of (doubly enclosed) marijuana while standing outside the car amid "exhaust fumes." Richard L. Doty et al., *Marijuana Odor Perception: Studies Modeled From Probable Cause Cases*, 28 LAW & HUM. BEHAV. 223, 227 (2004); *see also State v. Pollman*, 286 Kan. 881, 894 (2008) ("[T]he strength of

23

the smell is subjective and also depends on factors such as masking agents . . . and the environment where the odor is detected.").

A frequently-cited academic study from the University of Pennsylvania School of Medicine demonstrates the implausibility of Officer Barrie's claim. *See* Doty et al., *supra*. The researchers tested whether participants seated in a vehicle could reliably smell *one pound* of unburnt cannabis—roughly *220 times* more than Mr. Jackson had—stored in the car's trunk. *See id.* The result was striking: "the number of false positives . . . was essentially the same as the number of correct positives." *Id.* at 232. As the researchers summarized, "there was no convincing evidence that the marijuana could be discerned." *Id.* The researchers also tested the effects of "exhaust fumes" from the vehicle on the participants' ability to smell marijuana. *Id.* at 227, 231. And "[n]o convincing evidence was present in the data that any of the participants could reliably detect the marijuana odor embedded in the diesel fumes." *Id.* at 231.

Nor is this a case in which Officer Barrie's experience or training inspire confidence that he could smell 1/220th of what the study's participants could not reliably detect. Officer Barrie had only three years of experience as a police officer. *Cf. Ornelas*, 517 U.S. at 691–92 (noting one officer was "a 20-year veteran" of the police department and the other had "approximately 25 years of law enforcement experience"); *Moore*, 991 N.W.2d at 416 (emphasizing that officer "had frequent contact with marijuana in his 23 years as a police officer"). His duties have focused on traffic enforcement, not narcotics. *Cf. Ornelas*, 517 U.S. at 691–92 (emphasizing that one officer had "2 years specializing in drug enforcement" and the other had been "assigned for the past 6 years to the drug enforcement unit"). Nor did Officer Barrie undergo substantial narcotics training. *Cf. Overmyer*, 11 N.E. at 1056, 1059 (refusing to credit officers' testimony of a "very strong odor of unburnt marijuana" where there was "no evidence that the officers … had undergone specialized

24

training"). Under cross-examination, the only narcotics training Officer Barrie identified was two sessions in which participants smelled burnt and unburnt marijuana. *See* SA 45–46. That training, however, "did not involve any test of [the officer's] ability to detect [the] scent [of raw marijuana] from certain distances or inside certain packages." *Gray*, 548 F.Supp.3d at 809 (finding no reasonable suspicion for marijuana-related offenses even though officer had a "couple of hours" of narcotics training). Indeed, it is akin to a narcotics training the Pennsylvania Supreme Court recently found "lacking." *Barr*, 266 A.3d at 44 (discussing training where the two officers in the case "walk[ed] past a controlled marijuana burn for a few seconds").

Analogous precedent in the drug-sniffing-dog context highlights the inadequacy of Officer Barrie's training. In *Harris*, the Supreme Court suggested the Government should ordinarily present "proof from controlled settings that [a drug-sniffing dog] performs reliably in detecting drugs." *Harris*, 568 U.S. at 1052. Both courts and scholars have recognized that such evidence is probative in assessing whether humans can reliably smell marijuana. *See Overmyer*, 11 N.E. 3d at 1059 (discussing unreliability of human detection of cannabis and emphasizing importance of "specialized training" to "overcome the deficiencies inherent in smell"); Doty, *supra*, at 232 ("[S]tandardized procedures are needed to establish the smell ability of law enforcement officers who are called on to testify about odors of illicit drugs.").

Here, there is no evidence that Officer Barrie has *ever* been tested on his ability to smell any amount of marijuana, let alone small amounts like 2 grams. *Cf. United States v. Funds in Amount of One Hundred Thousand One Hundred Twenty Dollars*, 730 F.3d 711, 724 (7th Cir. 2013) (reversing finding of probable cause based on government's failure to present evidence that drug-sniffing dog could differentiate between tainted and untainted currency). Nor is there any evidence Officer Barrie was tested on his ability to differentiate between burnt and unburnt

marijuana.  *Cf. id.* at 725 (noting drug-sniffing dog's false alerts during blind testing would undermine reliability).  In short, Officer Barrie did not have enough training or experience to be sufficiently confident that Mr. Jackson had a tiny amount of unburnt cannabis hidden in his car.

### 2. The smell of marijuana alone would not establish probable cause that Mr. Jackson was unlawfully transporting marijuana.

Even assuming that Officer Barrie really did smell unburnt marijuana, that scent by itself did not create probable cause because the same scent could easily be explained by *lawful* activity.  As one Illinois court has explained, there are a "number of wholly innocent reasons a person or the vehicle in which they are in may smell of raw cannabis," because such scents can linger from prior lawful activities.  *People v. Molina*, No. 2020-TR-5612, Court's Order (Ill. Cir. Ct. 2022).[8]  Indeed, the Supreme Court has recognized that drug "odors" can be "transferred" to vehicles from prior exposures.  *Harris*, 568 U.S. at 249.  Perhaps Mr. Jackson had just come from a cannabis shop.  Perhaps he had been at a friend's house earlier in the day where marijuana-infused brownies were baked.  Or perhaps he consumed a lawful amount of unburnt cannabis himself.  Perhaps his passenger did any of those things.  But there is no evidence that Officer Barrie considered "the plausibility of [any such] innocent explanation[s]" before deciding to search Mr. Jackson's car.  *Hill*, 162 N.E.3d at 266.

In addition, Mr. Jackson could have been transporting legal hemp products that have the exact same odor as unburnt marijuana.  These products are very common.  *See Moore*, 991 N.W.2d at 420-21 (Dallet, J., dissenting) ("[V]irtually all adults can legally purchase hemp-derived products from local CBD stores.").  One recent survey found that 60% of people have used such products.  *See* Alena Hall, *CBD Statistics, Data and Use 2023*, Forbes Health (July 10, 2023), www.forbes.com/health/body/cbd-statisitics.  In particular, the survey found that 16% had smoked

---

[8] This case is currently being reviewed by the Illinois Supreme Court.  *See supra* note 7.

hemp flowers.  *Id.*; *see also, e.g.*, *Does Smoking Hemp Get You High?*, Ounce of Hope (Feb. 1, 2021) (discussing smoking of hemp), https://www.ounceofhope.com/will-smoking-hemp-or-cbd-flower-get-me-high.  Hemp products are not "cannabis" subject to Illinois's odorless-container law, which means that smelling them is *not* indicative of unlawful activity.  *See supra* at 5–6.  And multiple state law-enforcement agencies have concluded that "[l]egal hemp and illegal marijuana smell the same, 'both unburned and burned.'"  *Sherwood*, 55 Tenn. Bar J. at 15 (quoting North Carolina State Bureau of Investigation, *Industrial Hemp/CBD Issues* (last visited Sept. 16, 2023) [NC Report]).  Even drug-sniffing dogs "simply cannot tell the difference between hemp and marijuana."  *Id.* (quoting B. Campbell, *TBI Crime Lab Inundated With Marijuana vs Hemp Tests, Agents Want More Resources and Regulations* (2019) (quoting state narcotics specialist)).  And if drug-sniffing dogs cannot perform the task, it is hard to imagine that Officer Barrie—who identified no training or experience in distinguishing between hemp and cannabis—could.  The North Carolina State Bureau of Investigation aptly summarized the point:  "Hemp and marijuana … have the same odor, both unburned and burned.  That makes it impossible for law enforcement to use … the odor of marijuana to develop probable cause for arrest."  NC Report at 2.  At the very least, there is no evidence Officer Barrie considered "the plausibility of [a hemp-based] innocent explanation" before deciding to search Mr. Jackson's car.  *Hill*, 162 N.E.3d at 266.

Where a police officer observes something that is easily explained by lawful behavior, probable cause requires corroboration to push the balance of probabilities toward unlawful conduct.  Such corroborating evidence might not be required under the reasonable-suspicion standard.  *See United States v. Esquivel-Rios*, 725 F.3d 1231, 1236 (10th Cir. 2013) ("[R]easonable suspicion can be shown by evidence that is inherently less reliable in kind than the sort of evidence needed to establish probable cause."); *but see United States v. Watson*, 900 F.3d 892, 896-96 (7th

27

Cir. 2018) (Barrett, J.) (finding no reasonable suspicion based on "guns in public", which could be "legal" or "illegal[]").  But that standard is "considerably less" demanding than probable cause. *Glover*, 140 S. Ct. at 1187.  And upholding Officer Barrie's search of Mr. Jackson's car without corroborating evidence would render the probable-cause standard indistinguishable from reasonable suspicion.  *See, e.g.*, *United States v. Albert*, 579 F.3d 1188, 1196–97 (10th Cir. 2009) (concluding officer lacked probable cause but had reasonable suspicion because, under the latter standard, police "need not rule out the possibility of innocent conduct").

Here, Officer Barrie had no corroborating evidence to substantiate his suspicion that Mr. Jackson had violated the odorless-container law.  There was no drug-sniffing dog to confirm his hunch.  *Cf. United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008).  Nor another officer to check his assessment.  *Cf. Moore*, 991 N.W.2d at 414.  There was no tip from an informant.  *Cf. Clinton-Aimable*, 232 A.3d at 1095 (finding no probable cause based on cannabis odor even with informant's tip); *Lewis*, 233 A.3d at 91 (similar).  Officer Barrie had never interacted with Mr. Jackson before or seen him engage in unlawful activity.  *Cf. Cruz*, 945 N.E. 2d at 903 (finding no probable cause even where officer had previously seen defendant violate drug laws).  Officer Barrie testified that there was no evidence of marijuana smoke in Mr. Jackson's car—something he had seen in other stops.  SA 27; *cf. Cruz*, 945 N.E. 2d at 903 (finding no probable cause based on cannabis odor even when police saw defendant "light a small, inexpensive cigar that is commonly known to mask the odor" of cannabis); *Clinton-Aimable*, 232 A.3d at 1096 (same).  He also testified he did not see any marijuana "joints," ashes, papers, or any other paraphernalia in the car.  SA 26–27.  There were no brownies or crumbs.  *See id.* at 32.  Officer Barrie saw neither alcohol nor open containers.  *Id.* at 26–27.  He admitted that he saw no strange behavior from Mr. Jackson or his companion, who both complied promptly with all his instructions.  *See id.* at 24, 28,

29; *cf. Barr*, 266 A.3d at 44 (noting lack of suspicious behavior during stop undermined probable cause); *Cruz*, 945 N.E. 2d at 903 (finding no probable cause based on marijuana odor even though driver "was very nervous, had trouble breathing, and it almost looked like he was panicking" (internal quotation marks omitted)); *Clinton-Aimable*, 232 A.3d at 1096 (no probable cause based on cannabis odor even where defendant "was extremely nervous, he was not making eye contact, and his hands were shaking"). The caselaw contains *many* potential corroborating factors to justify car searches, but the Government can rely on none of them here.

This case has clear parallels with the Illinois appellate courts' decisions in *Stribling* and *Redmond*, which held that the smell of cannabis "alone" cannot support probable cause. *Stribling*, 2022 WL 4299289, at *6. "As was the case in *Stribling*, there are no corroborating factors in this case." *Redmond*, 207 N.E.3d at 1181. Officer Barrie did not "see any marijuana or drug paraphernalia, nor did [Mr. Jackson's] demeanor show that he was hiding anything." *Stribling*, 2022 WL 4299289, at *5; *Redmond*, 207 N.E.3d at 1181 (officer "did not observe any cannabis or related drug paraphernalia in the vehicle, smoke in the vehicle, or signs of impairment"). "[Mr. Jackson] did not delay pulling over or make any furtive movements." *Id.* at 1181. And "the smell of burnt [or unburnt] cannabis may have lingered in [Mr. Jackson's] car or on his clothing," *Stribling*, 2022 WL 4299289 at *5, explaining the odor. Thus, the odor alone would not "lead a reasonable officer to conclude there was a substantial chance" Mr. Jackson was unlawfully transporting cannabis. *Id.*; *accord Clinton-Aimable*, 232 A.3d at 1099-1101 (finding no probable cause to search car based on cannabis odor even with far more corroborating evidence).

This case also resembles this Court's decision in *Watson*, 900 F.3d 892. There, the Court held that the police lacked reasonable suspicion to effect a seizure based on a tip that "boys" were "playing with guns." *Id.* at 893. Important to the Court's analysis was its acknowledgment that

"carrying a firearm in public is permitted with a license in Indiana." *Id.* at 895.  Yes, "the presence or use of guns is not always legal," and the Court acknowledged the unlawful possibilities that minors were using the guns, that the guns were being used dangerously, and that "those seen with guns might not have had the required gun licenses." *Id.* at 895-96.  But the Court concluded that the "mere possibility of unlawful" conduct was "not sufficient to establish reasonable suspicion." *Id.* at 896 (citation omitted).  "Lacking detail, the report of guns in public does not suggest likely criminal activity." *Id.*

This case is substantially easier than *Watson*.  As in *Watson*, the alleged smell of cannabis in Mr. Jackson's car can be explained by both lawful and unlawful activity.  *Cf id.* at 895-96.  Just as more "detail" was needed to corroborate the tip in *Watson*, corroboration was needed to substantiate Officer Barrie's bare hunch in this case.  *Cf. id.* at 896.  But unlike in *Watson*, the Government must satisfy the considerably more demanding probable-cause standard.  *Watson* therefore makes this case a mere *a fortiori* matter.

This Court should follow cases like *Stribling*, *Redmond*, *Clinton-Aimable*, and *Watson.* Allowing car searches based solely on one inexperienced officer's claim that he smelled marijuana would substantially weaken "the fundamental requirements of probable cause" and "leave law-abiding citizens at the mercy of [police] officers' whim or caprice." *Wong Sun*, 371 U.S. at 479 (citation omitted).  Even assuming that all police officers proceed in good faith and reliably report (after the fact) what they smelled without relying on hindsight, courts and scholars have recognized that people's ability to smell marijuana is inconsistent and unreliable.  *See Overmyer*, 11 N.E.3d at 1059; Doty, *supra*, at 232.  In sum, although "[t]here is a widely accepted belief that people, and more specifically police officers, can detect the scent of marijuana ... 'the empirical basis for such claims is remarkably thin.'"  White, *supra*, at 223 (quoting A. Gilbert & J. DiVerdi, *Human*

*Olfactory Detection of Packaged Cannabis*, 60 Sci. & Just. 169, 169 (2020)).  One man's claim to smell a small amount of unburnt cannabis is just too thin a reed on which to rest a fundamental Fourth Amendment protection.

### C.     The Government's Likely Arguments Are Unavailing.

The Government made a series of arguments below, but none is persuasive.  *First*, the Government will likely argue that this Court's prior decisions finding probable cause to search vehicles based on marijuana odors are controlling.  They are not.  To start, none of the Government's cases features an officer's implausible claim to smell a tiny amount of sealed and hidden *unburnt* marijuana.  *Cf. United States v. Peters*, 743 F.3d 1113, 1115 (7th Cir. 2014) (probable cause based on odor of "burnt marijuana" and observation of marijuana particles on driver's clothing).  In any event, all cases cited by the Government below were decided in jurisdictions where it could argue the defendant had violated a statute criminalizing the possession or consumption of marijuana.  *See, e.g.*, *United States v. Kizart*, 967 F.3d 693, 695-696 (7th Cir. 2020) (explaining, before legalization, that probable cause based on "smell of burnt marijuana" was "not in dispute"); *Paige*, 870 F.3d at 700 ("[I]t is undisputed that marijuana possession remains a crime in Wisconsin."); *United States v. Wimbush*, 337 F.3d 947, 951 (7th Cir. 2003) (applying rule in Illinois at time marijuana possession was criminal under state law); *Franklin*, 547 F.3d at 733 (crime occurred in Indiana, where marijuana possession was and remains criminalized).  And those arguments and holdings were surely correct.  *See* White, *supra*, at 201 ("Just as an officer who *sees* what he knows to be contraband can search for more, an officer who *smells* what he knows to be contraband can do the same.").  Smelling marijuana on a person in a car plausibly suggests that the individual recently smoked, consumed, or possessed marijuana—either inside or outside the car.  And under the legal regime present in those cases, such behavior was indisputably

unlawful.  Indeed, the Illinois Supreme Court issued the same holding when cannabis possession and consumption were unlawful in Illinois.  *See People v. Stout*, 477 N.E.2d 498, 502 (Ill. 1985).

But the Illinois appellate courts and many state appellate courts have recognized that a different analysis must apply in states that legalize marijuana.  *See Redmond*, 207 N.E. 3d at 1179; *People v. Hall*, 57 Cal. App.5th 946, 954 (Cal. Ct. App. 2020) (dismissing prior precedents as having "little persuasive value because they predate" cannabis legalization law "which fundamentally changed the probable cause determination"); *supra* at 19–22.  Indeed, this Court has already recognized as potentially distinct the "questions that might arise in a state that permits medical marijuana, or a state that has legalized marijuana possession across-the-board."  *Paige*, 870 F.3d at 700 n.19.  If one considers that question afresh, it becomes clear that, "[f]ollowing legalization, cannabis odor, whether raw or burnt, can no longer be a basis for probable cause to search a vehicle in Illinois."  Podgurski, *supra*, at 30–31.  This Court should thus follow cases like *Stribling* and *Redmond*.  It should decline the Government's invitation to issue an outlier decision that splits with other appellate courts and creates unique federalism concerns.  *See, e.g.*, RSA 8 ("[D]isparity between the state and federal courts on this issue would yield undesirable results.").

*Second,* the Government will likely argue that the decisions in *Stribling* and *Redmond* are inapt because they addressed *burnt* cannabis, whereas *unburnt* cannabis is at issue here.  But some of the cases opposed to the Government's position *did* address unburnt cannabis.  *See, e.g.*, *Clinton-Amiable*, 232 A.3d 1092.  The Massachusetts Supreme Court, for example, specifically rejected an attempt to distinguish burnt from unburnt cannabis and held that the police lacked probable cause to search a car based solely on "an odor of unburnt marijuana."  *Overmyer*, 11 N.E. 3d at 1055.  And at least one Illinois court has held that the smell of unburnt cannabis alone does not provide probable cause for a vehicle search.  *See Molina*, No. 2020-TR-5612.  Although that

decision was reversed on appeal, the Illinois Supreme Court agreed to review the case. *See* People v. Molina, No. 129327, 2023 WL 2751668 (Ill. Mar. 29, 2023).

In any event, it is hard to see why unburnt cannabis should be treated differently than its burnt counterpart. Just as "the smell of burnt cannabis may have lingered in the defendant's car or on his clothing" in *Stribling* and *Redmond*, the smell of unburnt cannabis "may have lingered" on Mr. Jackson—either from prior lawful consumption or mere exposure to it. *Stribling*, 2022 WL 4299289, at \*5. Indeed, some courts have recognized that the smell of unburnt cannabis can also linger on a person. *See, e.g.*, *Molina*, No. 2020-TR-5612; *Overmyer*, 11 N.E.3d at 1058; *cf. Harris*, 568 U.S. at 249. Thus, the mere smell of unburnt cannabis alone would not "lead a reasonable officer to conclude there was a substantial chance" Mr. Jackson was unlawfully transporting cannabis. *Stribling*, 2022 WL 4299289 at \*5.

*Third*, the Government argued below that suppression of the firearm evidence was not warranted because Mr. Jackson was never seized. The District Court did not address this argument; thus, if the Court thinks this issue is colorable, it should remand.

But this Court can also easily reject the Government's position. To start, it is wrong on its own terms. Mr. Jackson was seized when Officer Barrie stopped his car. *See Brendlin v. California*, 551 U.S. 249, 255 (2007). That seizure escalated when Officer Barrie demanded Mr. Jackson turn over his keys. Even Officer Barrie testified that Mr. Jackson was "not free to go" after he "ask[e]d [Mr. Jackson] to give [over] his car keys." SA 42–43. And after being pressed by the District Court, the Government admitted Mr. Jackson "was not free to go" "at that point." *Id.* at 63.

In any event, it is well-established that evidence uncovered as a result of an unlawful search must be suppressed under the fruit-of-the-poisonous-tree doctrine. *See Wong Sun*, 371 U.S. at

486-91; *United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003) ("The Fourth Amendment's exclusionary rule extends as well to the indirect as the direct products of unconstitutional conduct." (internal quotation marks and citation omitted)).   Officer Barrie's decision to search Mr. Jackson's car, his demand for cooperation in that search, his arrest threat, and his seizure of Mr. Jackson's keys resulted in Mr. Jackson handing over the plastic bag with two grams of marijuana.   *Only that evidence* gave Officer Barrie the authority to search Mr. Jackson's person.   *See* RSA 9.   Had that not happened, Mr. Jackson's gun would not have been discovered.   Because the gun was "come at by the exploitation of [the] illegality" of Officer Barrie's prior actions, suppression is warranted.   *See Wong Sun*, 371 U.S. at 488.

## III.   Alternatively, this Court Should Remand to Allow the District Court to Assess Probable Cause in the First Instance.

As established, the District Court committed legal error by analyzing probable cause at the wrong moment in time.   *See supra* at 14–16.   Consequently, the District Court failed to conclude— one way or another—whether Officer Barrie had probable cause when he announced he would search Mr. Jackson's car, demanded cooperation, seized the keys, and threatened to arrest Mr. Jackson for not submitting to a "probable-cause search."   *Supra* at 8.

This Court should reverse the District Court's denial of Mr. Jackson's motion to suppress because it is clear that probable cause was lacking.   But if the Court finds the question close, it should at the very least remand to the District Court.   The District Court never analyzed the dispositive question in this case—whether Officer Barrie had probable cause to conduct a search of Mr. Jackson's car when he audibly declared that he was going to do so and demanded that Mr. Jackson cooperate.   "[C]ourts of appeals generally hesitate to decide issues" not decided by the district court.   *Bradley v. Village of Univ. Park, Ill.*, 59 F.4th 887, 900-01 (7th Cir. 2023).   After all, appellate courts are generally "court[s] of review, not of first view."   *United States v. Dingwall*,

6 F.4th 744, 762 (7th Cir. 2021) (Kirsch, J., concurring in the judgment) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 781 n.7 (2005)); *see Montano v. Texas*, 867 F.3d 540, 546-47 (5th Cir. 2017).

In this case, there are good reasons to stick to that general rule. Courts have typically only reached out to adjudicate issues not decided below "where the proper resolution is beyond any doubt" or the arguments "turn on pure issues of law." *Bradley*, 59 F.4th at 900–01 (internal quotation marks omitted). But neither exception applies here. This case presents novel legal questions that the District Court recognized as difficult. *See* RSA 7–8; SA 67. Indeed, the District Court leaned on the fact that reasonable suspicion is a weaker standard than probable cause. *See* RSA 8 (expressing relief that cases like *Stribling* were "limited to the issue of probable cause").

Further, this case does not "turn on pure issues of law." *Bradley*, 59 F.4th at 901. "[T]he resolution of a motion to suppress" is a "fact-intensive inquiry" in which the district court must make "credibility determinations" based on "its opportunity at the suppression hearing to hear the testimony and observe the demeanor of the witnesses." *Kempf*, 400 F.3d at 503. And credibility is important in this case. For the Government to have any chance of proving probable cause, it must establish that Officer Barrie—despite his lack of experience and limited training—credibly claimed he could smell a tiny amount of unburnt marijuana. The District Court apparently believed that Officer Barrie's claims were credible enough to support *reasonable suspicion*. *See* RSA 8. But that does not mean the District Court would have viewed Officer Barrie's testimony as credible and reliable enough to establish *probable cause*. After all, the reasonable suspicion standard is "considerably less" demanding. *Glover*, 140 S. Ct. at 1187. Therefore, if this Court doubts whether probable cause existed, remand is warranted.

## CONCLUSION

This Court should hold that Officer Barrie lacked probable cause to search Mr. Jackson's car and reverse the District Court's denial of the motion to suppress.  Alternatively, if the Court deems the probable-cause question to be close, it should vacate the decision below and remand for the District Court to consider the question in the first instance.[9]

Respectfully submitted,

Date: September 18, 2023

/s/ Louis J. Capozzi III
_____
Anthony J. Dick
Louis J. Capozzi III
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001.2113
+1.202.879.3939
lcapozzi@jonesday.com

*Counsel for Appellant*

---

[9] Based on Mr. Jackson's conviction, Judge James Shadid revoked Mr. Jackson's supervised release in another case, in which Mr. Jackson had previously been sentenced for drug-related offenses.  If the Court reverses or remands in No. 23-1721, then it should remand in No. 23-1708 so that Judge Shadid can consider, in the first instance, whether his supervised-release order remains justified.

## REQUEST FOR ORAL ARGUMENT

In accordance with Federal Rule of Appellate Procedure 34(a) and Circuit Rule 34(f), Defendant-Appellant Prentiss Jackson respectfully requests oral argument. This appeal raises important Fourth Amendment issues about whether one police officer's claim to smell "a little bit of" unburnt marijuana can, by itself, provide probable cause to search a vehicle in a jurisdiction that has expressly legalized the possession and consumption of marijuana. *See, e.g.*, *Clinton-Amiable*, 232 A.3d 1092, 1102-1103 (Vt. 2020) (concluding the answer is "no"); *People v. Stribling*, 2022 WL 4299289, at *2 (similar). There are also serious questions about whether the District Court provided any analysis on this case's dispositive legal question. Oral argument would substantially aid the Court in its analysis of this case.

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

This brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) and 7 Cir. R. 32(c) because it contains 12,025 words, excluding the parts of the brief exempted by Rule 32(f), as counted using the word-count function on Microsoft Word.

Dated:  September 18, 2023                    Respectfully submitted,

_/s/_ Louis J. Capozzi III

Louis J. Capozzi III

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2023, I electronically filed the original of the foregoing Brief of Defendant-Appellant with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.


Dated:  September 18, 2023                    Respectfully submitted,

                                             /s/ Louis J. Capozzi III

                                             Louis J. Capozzi III

## CIRCUIT RULE 30(d) CERTIFICATION

Pursuant to Circuit Rule 30(d), undersigned counsel hereby certifies that all materials required by Circuit Rules 30(a) and (b) are included in the Required Short Appendix, which is bound together with this brief.

Dated:  September 18, 2023          Respectfully submitted,

_/s/_ Louis J. Capozzi III

Louis J. Capozzi III

# REQUIRED
# SHORT APPENDIX

**REQUIRED SHORT APPENDIX TABLE OF CONTENTS**

| Date | Description | Appendix Pages |
|---|---|---|
| 11/21/2022 | Order Denying Motion to Suppress | RSA1 – RSA13 |
| 4/14/2023 | Judgment of Conviction | RSA14 – RSA19 |
| 4/17/2023 | Judgment re Revocation of Supervised Release | RSA20 – RSA22 |

E-FILED

Monday, 21 November, 2022  09:20:13 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-CR-20044** |
| | ) | |
| **PRENTISS JACKSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

In an Indictment (#1) filed July 6, 2022, Defendant, Prentiss Jackson, was charged with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Currently pending before the court is Defendant's Motion to Suppress (#16) filed October 10, 2022, to which the government filed a Response (#20) on October 28, 2022. An evidentiary hearing was held on November 7, 2022.

For the following reasons, Defendant's Motion (#16) is DENIED.

## BACKGROUND

Phillip Barrie of the Urbana, Illinois, Police Department testified at the evidentiary hearing. Additionally, footage from Barrie's body camera was admitted into evidence.

Barrie was on patrol just past midnight on June 11, 2022, when he observed a car driving without its headlights or taillights on. Barrie turned behind the car, activated his overhead emergency lights, and conducted a traffic stop.

Barrie identified Defendant as the driver of the car. He testified that when Defendant rolled his window down, he could smell the odor of unburnt cannabis. Barrie had been trained in identifying the odors of different forms of cannabis and could distinguish between burnt and unburnt. Barrie informed Defendant that his lights were not on, at which point Defendant turned on his lights. Barrie asked Defendant for his identification and insurance information, which Defendant provided.

Barrie testified that he had suspicion that Defendant could be driving under the influence of cannabis, based on his failure to turn on his lights and the odor of cannabis. Barrie also suspected a violation of a statute requiring cannabis in a vehicle in Illinois to be stowed in an odorless container.

Barrie informed Defendant that he "smelled a little bit of weed" and asked if Defendant and his passenger had been smoking. Defendant confirmed that he had smoked cannabis that day, but stated that he had not done so in the car. Barrie told Defendant that he would write him a warning ticket, then added: "I do need you to turn the car off and hand me the keys." Barrie explained that the car would be searched because of the cannabis odor. Barrie told Defendant he would be able "cut breaks," but only if Defendant was cooperative and told the truth. Defendant then produced a small, tied-off plastic baggy containing approximately two grams of cannabis. Barrie asked Defendant again to get out of the car. Defendant complied.

2

Barrie placed his hand on Defendant's arm as he stepped out of the car. Defendant proceeded to put his hands on the trunk. Barrie did not see or feel a firearm during this interaction.

Almost immediately thereafter, Defendant bolted away and fled from the scene on foot. As Barrie pursued, he saw Defendant reaching for his waistband. A firearm fell from Defendant's waistband to the ground as Defendant tripped. Defendant was then taken into custody, and the firearm was recovered.

## ANALYSIS

Defendant argues that he was unreasonably seized, in violation of the Fourth Amendment. Specifically, he contends that Barrie impermissibly extended the duration of the traffic stop when he began inquiring into Defendant's use of cannabis without sufficient reason to believe a cannabis offense had been committed. To that point, Defendant maintains that, even assuming Barrie's testimony that he smelled unburnt cannabis was credible, that smell, alone, no longer provides probable cause. Accordingly, Defendant requests that the firearm recovered by police be suppressed.

The government counters by arguing that Barrie acted with the requisite probable cause or reasonable suspicion at each step throughout the traffic stop. Alternatively, the government argues that the lawfulness of the traffic stop is irrelevant because Defendant fled from the scene and was, therefore, not seized when the firearm was discovered, such that the exclusionary rule does not apply.

The Fourth Amendment protects individuals from "unreasonable searches and seizures" of their persons or property. U.S. Const. amend IV. "Generally, the decision to stop a car is reasonable, and comports with the Fourth Amendment, 'where the police have probable cause to believe that a traffic violation has occurred.'" *United States v. Simon*, 937 F.3d 820, 828 (7th Cir. 2019) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). Probable cause is established "[w]hen a police officer reasonably believes that a driver has committed even a minor traffic offense." *Tapley v. Chambers*, 840 F.3d 370, 377 (7th Cir. 2016).

Police may also conduct a brief investigatory stop where they have "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id*. Reasonable suspicion, like probable cause, "is an objective standard, based upon the facts available to the officers at the moment of the seizure." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015).

In the instant case, there is no dispute that (1) Defendant was driving his car just past midnight without headlights or taillights activated, (2) Barrie observed as much, and (3) Defendant's conduct amounted to a violation of the Illinois Vehicle Code (see 625 Ill. Comp. Stat. 5/12-201). Accordingly, there is no dispute that Barrie had probable cause to conduct the traffic stop.

4

*Barrie's Cannabis Inquiry*

Defendant first argues that he was detained "longer than was necessary to investigate the original purpose of the stop." On this point, the Supreme Court has held:

> A routine traffic stop is more like a brief stop under *Terry* . . . than an arrest. Its tolerable duration is determined by the seizure's "mission," which is to address the traffic violation that warranted the stop and attend to related safety concerns. Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. The Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention, but a traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket.

*Rodriguez v. United States*, 575 U.S. 348, 348-49 (2015) (cleaned up).

"An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as the inquiries do not measurably extend the stop's duration." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). In *Rodriguez*, the Court affirmed that questions designed to detect crime must be independently supported by reasonable suspicion, even if the extension of the duration of the seizure caused by those questions is negligible. *Rodriguez*, 575 U.S. at 356-68.

Here, Barrie told Defendant that he smelled "a little bit of weed" and asked if he and his passenger had been smoking that night. Neither the comment nor the question was related to the original bases for the stop—headlight and taillight infractions. Moreover, the evidence provides no indication that Barrie (or any other officer on the scene) was completing tasks related to the original purpose of the stop

5

contemporaneously with Barrie's comments.[1] Accordingly, Barrie extended the

duration of the stop. The court must now consider whether he had the required

reasonable suspicion to do so.

At the time that Barrie brought up the topic of cannabis, he had made two

notable observations: (1) Defendant was driving in the dark without headlights or

taillights on, and (2) the odor of unburnt cannabis was emanating from inside

Defendant's car. Barrie testified that these observations led him to suspect two distinct

offenses had been committed: driving under the influence of cannabis and violation of

the statute requiring cannabis in a vehicle in Illinois to be stowed in an odorless

container.

The reasonableness of the first of these suspicions is significantly undermined by

Barrie's testimony that the odor he detected was of *un*burnt cannabis. Barrie testified

that cannabis may be consumed in fashions that do not require burning, namely, by

baking it into other foods. But he also testified that he had no indication that any such

baked goods were in the car. Additionally, there was no testimony that the odor of

unburnt cannabis would continue to emanate from cannabis-infused foods. In short,

Barrie's observations were not indicative of the *consumption* of cannabis, such as might

support a suspicion of driving under the influence. The observation of Defendant's

---

[1] Defendant suggests in his motion that the purpose of the stop was completed once Defendant activated his lights. However, it remained for a citation—warning or otherwise—to be issued. See *Rodriguez*, 575 U.S. at 349.

headlight and taillight infractions, standing alone, does not create reasonable, articulable suspicion to support a DUI investigation.

Sections 11-502.15(b) and (c) make it a Class A misdemeanor for a driver or passenger, respectively, to transport cannabis in a motor vehicle "except in a secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible." 625 Ill. Comp. Stat. 5/11-502.15(b), (c). Barrie's observation of Defendant's headlight offense plainly plays no role with respect to suspicion of this offense. Thus, the court comes to the following question: Does Barrie's observation of the odor of unburnt cannabis give rise to a reasonable, articulable suspicion of a violation of section 11-502.15 of the Illinois Vehicle Code, such that would justify Barrie's extension of the duration of the traffic stop?

The Seventh Circuit has routinely held that the odor of cannabis alone justifies a Fourth Amendment search or seizure. *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008) ("A police officer who smells marijuana coming from a car has probable cause to search that car."); see also *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020) ("That the smell of burnt marijuana gave [the officer] probable cause to search the sedan's passenger compartment is not in dispute.").

Citing Illinois' recent legalization of recreational cannabis and subsequent changes to the state's Fourth Amendment jurisprudence, Defendant urges this court to depart from Seventh Circuit precedent.[2] Specifically, Defendant relies on *People v.*

---

[2] The court notes that this departure would be a marked one, given that the Seventh Circuit has established that the odor of cannabis creates probable cause justifying a vehicle

*Stribling*, --- N.E.3d ---, 2022 IL App (3d) 210098, ¶ 29, in which the Illinois Appellate Court held for the first time that, given the recent legalization of recreational cannabis, "the smell of the burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search the vehicle." Defendant observes, correctly, that disparity between the state and federal courts on this issue would yield undesirable results.

Fortunately, this court need not weigh in on that particular issue. The *Stribling* court's holding was limited to the issue of probable cause; the court made no mention of the lesser reasonable suspicion standard. Furthermore, the *Stribling* court was concerned only with the odor of *burnt* cannabis. Such a smell does not suggest an infraction of the odorless container requirement. In fact, the *Stribling* court did not discuss section 11-502.15 of the Illinois Vehicle Code at all.

The odor of *un*burnt cannabis emanating from a vehicle is a reasonable indication that cannabis is in the vehicle, in a container that is, clearly, not "odor-proof." It follows that the observation of such an odor gives rise to, at the very least, a reasonable, articulable suspicion that there has been a violation of sections 11-502.15(b) or (c) of the Illinois Vehicle Code. The court therefore finds that Barrie's "extension" of the traffic stop was constitutionally permissible.

---

search, while here, Barrie would only need reasonable suspicion to make inquiry into the subject.

*End of Barrie's Investigation*

Defendant next argues that Barrie's investigation into the cannabis odor was completed once Defendant produced the baggy of cannabis. He contends: "Officer Barrie claimed he could smell a 'little bit' of cannabis, which was confirmed once Defendant showed the small amount of personal use cannabis. No further investigation was justified, given the circumstances."

This argument is easily dismissed. First, once Defendant produced the baggy of cannabis, it confirmed that he was in violation of section 11-502.15(b) of the Illinois Vehicle Code. At that point, Barrie had probable cause to arrest him for that offense. See *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) ("A person stopped on reasonable suspicion must be released as soon as the officers have assured themselves that no skullduggery is afoot. Probable cause, by contrast, justifies a custodial arrest and prosecution, and arrests are fundamentally different from *Terry* stops. Persons who are arrested may be taken to the station house for booking, even if the only penalty for the offense is a fine (as it is for failure to wear a seat belt)."). In turn, a search of both Defendant's person and his car would have been reasonable searches incident to arrest. *United States v. Paige*, 870 F.3d 693, 701-03 (7th Cir. 2017).[3]

Second, as a more practical matter, it cannot be the case that a suspect's voluntary production of some contraband must, as a matter of law, cease an officer's

---

[3]While Barrie never placed Defendant under formal arrest, he also never performed any sort of search. The court makes the above observations only to show that the interaction was not completed upon Defendant's production of cannabis.

investigation into that contraband. Such a result would permit a suspect to relinquish, for example, a small portion of his cannabis in order to protect the remainder of a significantly larger amount from detection. The court finds no Fourth Amendment violation in Barrie's actions after Defendant's production of the cannabis.

*Seizure of Defendant's Keys*

Finally, Defendant argues that he "was seized without probable cause to do so, but [sic] when asked to surrender his keys."

Of course, Defendant was already seized as soon as he submitted to the traffic stop. The court presumes that Defendant's argument is that confiscation of his keys was a more intrusive seizure, requiring independent probable cause. Defendant has provided no citation to authority—or argument, for that matter—in support of the assertion that the confiscation of car key transforms a *Terry* stop into an arrest or arrest-adjacent seizure requiring probable cause.

In fact, case law suggests otherwise. The Seventh Circuit has explained that the distinction between a *Terry* stop and a custodial arrest is not susceptible to any bright line. *United States v. Chaidez*, 919 F.2d 1193, 1198 (7th Cir. 1990). Absent such a bright line, the rule of reasonableness must prevail: "Stops too intrusive to be justified by suspicion under *Terry*, but short of custodial arrest, are reasonable when the degree of suspicion is adequate in light of the degree and duration of restraint." *Id*. In sum:

> The reasonableness of an investigatory stop may be determined by examining:
> (1) whether the police were aware of specific and articulable facts giving rise to
> reasonable suspicion; and (2) whether the degree of intrusion was reasonably
> related to the known facts. In other words, the issue is whether the police

10

conduct—given their suspicions and the surrounding circumstances—was reasonable.

*United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994); see also, e.g., *United States v. Lofftin*, 2007 WL 5601489, at *2 (W.D. Wis. Feb. 2, 2007), report and recommendation adopted, 2007 WL 5658885 (W.D. Wis. Feb. 13, 2007) ("Ordering a motorist to drop his car keys onto the shoulder probably does not convert a traffic stop in a felon-with-ammunition investigation into a seizure sufficiently intrusive to require probable cause.").

The court also notes that the Supreme Court has granted officers conducting traffic stops a wide range of discretion related to officer safety. The potential danger to police officers inherent in every roadside stop "is likely to be greater when there are passengers in addition to the driver in the stopped car." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). "Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). This is the case even where "the officer had no reason to suspect foul play from the particular driver at the time of the stop." *Id.* at 109.

In both *Mimms* and *Wilson*, the Court concluded that the legitimate and weighty interest in officer safety outweighed the "de minimis" intrusion upon personal liberty occasioned by ordering a driver or passenger out of a vehicle. *Mimms*, 434 U.S. at 111; *Wilson*, 519 U.S. at 412, 415. Courts have applied these cases in finding that an officer's

11

request for car keys is reasonable. E.g., *Baxter v. Roberts*, 2021 WL 1166764, at *7 (N.D. Fla. Mar. 28, 2021); *United States v. Sparks*, 2007 WL 2422126, at *4 (S.D. Ga. Aug. 22, 2007) (officer "was entitled to direct defendant to put his keys on the roof of the vehicle and to instruct all occupants to show their hands and to exit the vehicle even without any specific reason to suspect that they posed a threat to her safety.").

If Barrie's ordering Defendant out of his car was constitutionally permissible under *Mimms*, it is difficult to discern how the confiscation of Defendant's car key alters the nature of that intrusion in *any* fashion, de minimis or otherwise.

Moreover, at the point at which Barrie requested Defendant's key, Defendant had admitted to having smoked cannabis earlier that day. In conjunction with Defendant's traffic offense, Barrie would then have had the reasonable suspicion to investigate a potential DUI,[4] including conducting field sobriety tests. *Singleton v. City of E. Peoria*, 2016 WL 1408059, at *3 (C.D. Ill. Apr. 8, 2016) ("[O]fficers may administer field sobriety tests if they have a reasonable, articulable suspicion that a motorist is intoxicated."). Barrie also had continuing reasonable suspicion of a misdemeanor cannabis offense. It was reasonable to detain Defendant based on these suspicions, and the seizure of Defendant's car keys during the period of detention did nothing to alter

---

[4] It is notable that Defendant activated his headlights and taillights after Barrie informed him of the issue. This suggests that the infraction might have stemmed from some sort of user error or impaired functioning, whereas broken or inoperable lights, while still an infraction, would not give rise to such an inference. While, as discussed earlier, the infraction alone would not justify a DUI investigation, the infraction plus Defendant's admission to having recently consumed cannabis would justify further investigation.

the nature or duration of that detention or increase the degree of intrusion. See *Tilmon*, 19 F.3d at 1224.

Accordingly, the court finds that Barrie's actions at each step of the stop comported with the reasonableness requirement of the Fourth Amendment. The court therefore need not consider the effect, if any, of Defendant's flight on the issue of suppression.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Suppress (#13) is DENIED.

(2) A status conference is hereby set in this matter for Friday, December 2, 2022, at 3:15, by video.

(3) The matter remains set for a jury trial on Tuesday, January 17, 2023, at 9:00 a.m. in Courtroom A.

ENTERED this 21st day of November, 2022.

<u>s/Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE

13

**RSA13**

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
                       Sheet 1

# UNITED STATES DISTRICT COURT

Central District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Prentiss Jackson | Case Number:  22-CR-20044-001 |
| | USM Number:  15033-026 |
| | Charles Gregory Schierer |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s)   1

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

FILED

APR 1 4 2023

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm by a Felon | 6/11/2022 | 1 |

The defendant is sentenced as provided in pages 2 through   6   of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

4/10/2023
Date of Imposition of Judgment

s/Colin S Bruce

Signature of Judge

Colin S. Bruce, U.S. District Judge
Name and Title of Judge

4-14-23
Date

AO 245B (Rev. 09/17)  Judgment in Criminal Case
          Sheet 2 — Imprisonment

Judgment — Page   2   of   6

DEFENDANT: Prentiss Jackson
CASE NUMBER: 22-CR-20044-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

72 months. Said term shall run consecutive to any term of incarceration imposed in the revocation proceeding in U.S. District Court, Central District of Illinois, Case No. 10-20043.

☑  The court makes the following recommendations to the Bureau of Prisons:

1. It is recommended that the defendant serve his sentence in a facility as close to his family in Champaign, Illinois, as possible. 2. It is further recommended that he serve his sentence in a facility that will allow him to maximize his exposure to educational and vocational opportunities.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m. ☐ p.m.   on _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**RSA15**

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
        Sheet 3 — Supervised Release

Judgment—Page   3   of   6

DEFENDANT:    Prentiss Jackson
CASE NUMBER:   22-CR-20044-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

 3 years.

        The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
         ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

        If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant must comply with the following conditions:

1. You shall not knowingly leave the federal judicial district in which you are approved to reside without the permission of the Court or probation officer.

2. You shall report to the probation office in the district to which you are released within 72 hours of release from custody. You shall report to the probation officer in a reasonable manner and frequency directed by the court or probation officer.

3. You shall follow the instructions of the probation officer as they relate to your conditions of supervision. You shall answer truthfully the questions of the probation officer as they relate to your conditions of supervision, subject to your right against self-incrimination.

4. You shall notify the probation officer at least ten days prior to, or as soon as you know about, any changes in residence or any time you leave a job or accept a job.

5. The defendant shall permit a probation officer to visit him at home or any other reasonable location between the hours of 6 a.m. and 11 p.m., unless investigating a violation or in case of emergency. The defendant shall permit confiscation of any contraband observed in plain view of the probation officer.

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
    Sheet 3A — Supervised Release

| | | | | | |
|---|---|---|---|---|---|
| | | Judgment—Page | 4 | of | 6 |

DEFENDANT: Prentiss Jackson
CASE NUMBER: 22-CR-20044-001

## ADDITIONAL SUPERVISED RELEASE TERMS

6. The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

7. You shall not knowingly be present at places where you know controlled substances are illegally sold, used, distributed, or administered.

8. You shall not knowingly meet, communicate, or otherwise interact with any person whom you know to be a convicted felon or to be engaged in, or planning to engage in, criminal activity, unless granted permission to do so by the Court.

9. You shall not knowingly possess a firearm, ammunition, or destructive device as defined in 18 U.S.C. § 921(a)(4) or any object that you intend to use as a dangerous weapon as defined in 18 U.S.C. § 930(g)(2).

10. The defendant shall attempt to secure regular and lawful employment, unless excused by the probation office for schooling, training, or other acceptable reasons. The defendant shall keep the probation officer advised of any changes in his employment status.

11. You shall refrain from excessive use of alcohol, as defined as the legal limit of impairment in the state in which you are located.

12. You shall not purchase, possess, use, distribute, or administer any controlled substance or psychoactive substances that impair physical or mental functioning except as prescribed by a physician. You shall participate in a program for substance abuse treatment as approved by the U.S. Probation Office including not more than six tests per month to determine whether you have used controlled substances. You shall abide by the rules of the treatment provider. You shall pay the costs of the treatment to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the court's review upon request.

### U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____    Date _____

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  5  of  6

DEFENDANT: Prentiss Jackson
CASE NUMBER: 22-CR-20044-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | $        0.00 | $        0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**RSA18**

AO 245B  (Rev. 09/17)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page    6    of    6

DEFENDANT:  Prentiss Jackson
CASE NUMBER:  22-CR-20044-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $   100.00   due immediately, balance due

    ☐   not later than _____ , or
    ☐   in accordance with  ☐  C,   ☐  D,   ☐  E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☑   The defendant shall forfeit the defendant's interest in the following property to the United States:
    The Court orders the defendant forfeit all rights, title and interest in and to: (1) a .40 caliber Ruger SR40 semi-automatic pistol, bearing serial number: 34210536; and (2) any ammunition found therein.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

✎AO 245D    (Rev. 12/03) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

Central _____ District of _____ Illinois

UNITED STATES OF AMERICA
## V.

Prentiss Jackson

**JUDGMENT IN A CRIMINAL CASE**
(For **Revocation** of Probation or Supervised Release)

Case Number:    10-CR-20043-001

USM Number:    15033-026

Charles Gregory Schierer
Defendant's Attorney

## THE DEFENDANT:

☑ admitted guilt to violation of condition(s)  MC _____ of the term of supervision.

☐ was found in violation of condition(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | Law Violation: Armed Violence | 6/11/2022 |
| | Law Violation: Unlawful Possession/Use of a Weapon by a Felon | 6/11/2022 |
| | Law Violation: Possession of a Controlled Substance - | 6/11/2022 |
| | Methylenedioxymethametamine (MDMA-Ecstasy) | 6/11/2022 |

The defendant is sentenced as provided in pages 2 through ___3___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec. No.:  8100

Defendant's Year of Birth:  1982

City and State of Defendant's Residence:

Champaign, Illinois

4/13/2023
Date of Imposition of Judgment s/James E. Shadid

Signature of Judge

James E. Shadid                    U.S. District Judge
Name of Judge                      Title of Judge

4/17/2023
Date

**RSA20**

AO 245D     (Rev. 12/03) Judgment in a Criminal Case for Revocations
            Sheet 1A

DEFENDANT:  Prentiss Jackson

Judgment—Page    2    of    3

CASE NUMBER:  10-CR-20043-001

## ADDITIONAL VIOLATIONS

| Violation Number | Nature of Violation | Violation Concluded |
|---|---|---|
| | Law Violation: Possession of a Controlled Substance - Cannabis | 6/11/2022 |
| | Law Violation: Resisting Obstructing a Peace Officer | 6/11/2022 |
| 2 | Law Violation: Possession of a Firearm by a Felon | 6/11/2022 |

**RSA21**

AO 245D   (Rev. 12/03 Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

DEFENDANT: Prentiss Jackson
CASE NUMBER: 10-CR-20043-001

Judgment — Page ___3___ of ___3___

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of :

36 months. 12 months to be served consecutive and 24 months to be served concurrent to the imprisonment imposed in Central District of Illinois Case No. 22-CR-20044.

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**RSA22**