In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 23-1708 & 23-1721

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PRENTISS JACKSON,

*Defendant-Appellant.*

_____

Appeals from the United States District Court for the
Central District of Illinois.
No. 2:10-cr-20043-JES-JEH-1 — **James E. Shadid**, *Judge*, and
No. 2:22-cr-20044-CSB-EIL-1 — **Colin S. Bruce**, *Judge*.

_____

ARGUED MARCH 28, 2024 — DECIDED JUNE 4, 2024

_____

Before BRENNAN, SCUDDER, and LEE, *Circuit Judges*.

BRENNAN, *Circuit Judge*. An Urbana, Illinois, police officer
pulled over a car just after midnight because its head and tail-
lights were not lit. During the traffic stop, the officer smelled
unburnt marijuana. He asked the driver, Prentiss Jackson, to
exit the car and told Jackson he would search him and the

vehicle. Soon after leaving the car, Jackson ran. While fleeing, a gun fell from his waistband.

Jackson was indicted for possessing a firearm as a felon. He moved to suppress evidence of the gun, arguing it was the product of an unlawful search. The district court denied Jackson's motion. He conditionally pleaded guilty, was convicted, and now appeals the denial of his motion to suppress. We affirm.

## I

The facts below come from testimony taken and the officer bodycam video presented at the evidentiary hearing held on Jackson's motion to suppress.

Shortly after midnight on June 11, 2022, Prentiss Jackson and a passenger drove through Urbana, Illinois, with unlit head and taillights. As a result, an Urbana police officer conducted a traffic stop. The officer asked for Jackson's driver's license and registration. Jackson did not have his license but produced another form of identification.

The officer smelled the odor of unburnt marijuana emanating from the car. He knew the odor came from inside the car, as he had not smelled it before he approached the vehicle. During their conversation about the license and registration, the officer told Jackson he smelled "a little bit of weed" and asked if Jackson and the passenger had been smoking. Jackson said he had, but that was earlier in the day, and he had not smoked inside the car.

Through the officer's training, he knew the most common signs of impairment for driving under the influence were the odor of marijuana or alcohol and speech issues. He was also taught to look for traffic violations. Concerned that Jackson

might be driving under the influence because of the head and taillight violation, the odor of marijuana, and Jackson's admission that he had smoked earlier, the officer asked Jackson whether he was "safe to drive home." Jackson said he was. His speech was not slurred during the interaction, and his responses were appropriate.

After questioning Jackson about the marijuana smell, the officer asked Jackson to wait for a moment so he could write a warning, to turn the car off, and to hand over the keys. Jackson complied. The officer said he would search Jackson and the car. He asked if there were "guns, knives, drugs, [or] bombs" in the car and told Jackson he could "cut breaks and warnings" if Jackson and the passenger were "honest with [him] up front." Jackson told him none of those items were in the car. The officer then asked Jackson to get out and walk to the back of the car, cautioning Jackson not to reach for his waistband.

Before Jackson exited the car, the passenger asked why the officer planned to search the car. The officer told her he could smell marijuana and explained the potential violation of Illinois law. He was ready to write up a warning for the marijuana violation, the officer told them, but he also said he was prepared to make an arrest if Jackson and the passenger were uncooperative and refused to get out of the car and permit a "probable cause" search.

In response to this line of conversation, Jackson acknowledged he had some "weed" and handed the officer a tied-off plastic baggie that appeared to contain about two grams of unburnt marijuana. The officer explained "having weed like th[at was] illegal inside the confines of a vehicle" under Illinois law.

The officer again asked Jackson to step out of the car. Jackson complied and walked calmly to the back of the car. The officer intended to pat Jackson down and conduct a field sobriety test. Jackson placed his hands on the trunk. The officer turned to put his flashlight in its holster, and Jackson ran. A few seconds into his flight, Jackson tripped, and a gun fell from his waistband. The officer caught up with Jackson, restrained him so Jackson could not reach the firearm, and arrested him.

Jackson moved to suppress evidence of the gun, arguing it was the product of an unlawful search and seizure. The district court held a suppression hearing at which the officer testified as the only witness, and the government presented his bodycam video. The facts and testimony at the hearing tracked the video evidence.

The district court denied Jackson's motion. After the court's decision, Jackson entered a conditional guilty plea in case no. 23-1721, reserving his right to appeal the district court's denial of his motion to suppress. *See* Fed. R. Crim. P. 11(b). The district court sentenced Jackson to 72 months' imprisonment. In case no. 23-1708, the district court revoked Jackson's supervised release for, among other things, unlawfully possessing a firearm.

## II

Jackson now appeals the denial of his motion to suppress the gun. We review the district court's factual findings "for clear error, while legal conclusions and mixed questions of law and fact are reviewed de novo." *United States v. Yang*, 39 F.4th 893, 899 (7th Cir. 2022). "A factual finding is clearly erroneous only if, after considering all the evidence, [the court]

cannot avoid or ignore a definite and firm conviction that a mistake has been made." *Id.* (cleaned up).

This court gives "special deference to credibility determinations and will uphold them unless completely without foundation in the record." *United States v. Norton*, 893 F.3d 464, 467 (7th Cir. 2018) (cleaned up). That is in part because the factual determinations underlying a district court's credibility determinations are uniquely within the district court's competence, and this court reviews those findings for clear error. *See United States v. Eymann*, 962 F.3d 273, 281 (7th Cir. 2020).

When applying the Fourth Amendment to law enforcement action, the Supreme Court has repeatedly confirmed that "the ultimate touchstone of the Fourth Amendment" in evaluating law enforcement action is "reasonableness." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "'Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.'" *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

Jackson contends that evidence of the firearm should have been suppressed because the officer did not have probable cause to search him or the car. He argues that the officer relied on the smell of unburnt marijuana, which he contends does not provide probable cause to search a vehicle under Illinois law.

"Warrantless searches are per se unreasonable under the Fourth Amendment, subject to only certain exceptions." *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). Relevant here is the

automobile exception, which allows authorities to search a car without a warrant if they have probable cause. *See Collins v. Virginia*, 584 U.S. 586, 592 (2018); *United States v. Ross*, 456 U.S. 798, 807–09 (1982); *Carroll v. United States,* 267 U.S. 132, 149, 153–56 (1925); *United States v. Ostrum*, 99 F.4th 999, 1005–06 (7th Cir. 2024). "Probable cause to search a vehicle exists when, based on the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Sands*, 815 F.3d 1057, 1063 (7th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see Kizart*, 967 F.3d at 695.

The district court correctly ruled that evidence of the firearm should not have been suppressed. The officer had probable cause to search Jackson and the vehicle, whether based on the totality of the circumstances or because of the smell of unburnt marijuana alone.

## A

Jackson is incorrect that the only evidence in support of probable cause when the officer announced an intent to search and ordered him out of the vehicle was the odor of unburnt marijuana. The totality of the circumstances provided probable cause to search Jackson and the vehicle.

Consider the circumstances of the traffic stop. The officer pulled Jackson over because he had been driving in the dark with unlit head and taillights, a state law violation, *see* 625 ILL. COMP. STAT. ANN. 5/12-201. After pulling over the car, the officer asked for license and registration. But Jackson did not have his license, another state law violation. *See id.* at 5/6-101 (prohibiting driving without a valid license in Illinois).

At any point after this lawful stop, the officer could have ordered Jackson out of the vehicle, even if the officer "ha[d] no reason to suspect foul play." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). But the officer did suspect further issues—he smelled the odor of unburnt marijuana coming from the car. Although possession of marijuana in certain amounts is legal in Illinois, the smell of unburnt marijuana coming from the car signaled that Jackson had marijuana in the car in an improper container, another violation of Illinois's law. *See id.* at 5/11-502.15(b), (c).

The circumstances also could suggest that Jackson was driving while impaired. *See id.* at 5/11-501. When questioned about the smell, Jackson admitted to smoking marijuana earlier. And although Jackson responded to questions and did not seem impaired to the officer, that officer knew that failure to follow the simplest of traffic laws—like turning on your lights just after midnight—could indicate driving under the influence. *Cf. United States v. Cade*, 93 F.4th 1056, 1062 (7th Cir. 2024) (citing *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992)) (holding where a driver admits to drinking alcohol and an officer sees an open alcohol container in the car, the officer had probable cause to search the driver and car). Thus, a search of Jackson and the car was warranted as possibly providing further evidence of criminal conduct.

Jackson responds that the officer's credibility should be questioned because he failed to conduct field sobriety tests or note any suspicion of impairment in his police report. But Jackson's speculation does not overcome the officer's credible testimony that he intended to perform such a test. *See, e.g., United States v. Hendrix*, 509 F.3d 362, 373 (7th Cir. 2007) ("Because the resolution of a motion to suppress is a fact-specific

inquiry, we give deference to credibility determinations of the district court, who had the opportunity to listen to testimony and observe the witnesses at the suppression hearing."). In any event, the officer's subjective intent does not control the analysis. *See, e.g.*, *Robinette*, 519 U.S. at 38 ("As we made clear in *Wren*, 'the fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'") (quoting *Wren v. United States*, 517 U.S. 806, 813 (1996)); *see also Cole*, 21 F.4th at 428 n.1.

Jackson further argues it was impossible for the officer to smell two grams of unburnt marijuana. But Jackson provides no evidence that the officer lied about smelling the marijuana.

To rebut the officer's testimony and the district court's credibility finding, Jackson must show that the district court clearly erred in determining that the officer smelled unburnt marijuana and was able to differentiate that odor from burnt marijuana. *Yang*, 39 F.4th at 899. And he must explain why the district court's implicit determination that the officer's testimony was credible—a determination this court upholds "unless completely without foundation in the record"—should be reversed. *Norton*, 893 F.3d at 467. Jackson has done neither. The officer's testimony is supported by Jackson turning over a baggie of unburnt marijuana during the traffic stop. Under the totality of these circumstances, the officer had probable cause to search Jackson and the car.

Jackson offers other arguments, but they are not persuasive. He says a similarity between the odors of unburnt marijuana and legal hemp undercuts the finding of probable cause. This argument was not raised below and is thus

waived. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012); *see also United States v. Payne*, 102 F.3d 289, 293 (7th Cir. 1996) ("'We have repeatedly held that a party that fails to press an argument before the district court waives the right to present that argument on appeal.'" (citing *United States v. Gonzalez*, 933 F.2d 417, 448 (7th Cir. 1991))).

He also offers additional scenarios that he says might cause a car to emit an odor of unburnt marijuana. Yet, law enforcement does not need to rule out every innocent explanation for probable cause to be established. As the Supreme Court has explained, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 245 n.13 (internal citations omitted). "By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands." *Id.*

## B

Irrespective of the totality of the circumstances, Jackson argues that only the smell of unburnt marijuana supported the probable cause determination. Because Illinois has legalized marijuana for adult recreational use, he contends that smell alone cannot provide probable cause for a search or seizure. We consider this argument in the context of current law.

The smell of marijuana alone justifies a Fourth Amendment search or seizure. *See Kizart*, 967 F.3d at 695 (noting the smell of "burnt marijuana" provides probable cause to search an entire vehicle during a traffic stop); *see also United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017) (holding the smell of "fresh marijuana" coming off a person supports probable

cause to arrest that person); *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008) ("A police officer who smells marijuana coming from a car has probable cause to search that car." (citing *United States v. Wimbush*, 337 F.3d 947, 951 (7th Cir. 2003))). Further, the possession of marijuana is illegal under federal law. *See* 21 U.S.C. §§ 812 (c)(10), 844. Jackson responds that the government failed to raise that point in the district court and thus waived it. The federal marijuana prohibition was mentioned twice below: (1) the district court and defense counsel referenced a potential difference between the state and federal regulations on marijuana in conversation, and (2) the prosecutor noted in argument on the suppression motion the court's point that marijuana "remains something that can give rise to probable cause."

Even if we conclude that the government waived this point, Jackson's case is not impacted by it. The officer still had probable cause to search Jackson and the car. While Illinois has legalized marijuana for recreational use in some circumstances, as the officer said to Jackson and the passenger during the traffic stop, the state retains laws restricting the packaging of and use of marijuana. *See, e.g.*, 625 ILL. COMP. STAT. ANN. 5/11-501 (prohibiting using marijuana to the point of intoxication before or while driving, i.e., driving under the influence); *id.* at 5/11-502.15(b), (c) (prohibiting transporting marijuana in certain containers in a vehicle).[1] Jackson did not comply with that requirement, so the smell of unburnt marijuana provides probable cause for a violation of that state law.

---

[1] Illinois statutes and cases use the term "cannabis," the equivalent of "marijuana" under federal law. This opinion uses the term "marijuana" throughout, except when quoting Illinois cases.

Interpretation of those state laws by Illinois courts supports this reading. In *People v. Molina*, the Fourth District of the Illinois Appellate Court held that "an officer who smells cannabis in a vehicle he has just stopped is almost certain to discover a violation of the [Illinois] Vehicle Code because the law clearly states that when cannabis is transported in a private vehicle, the cannabis must be stored in a *sealed*, *odor-proof* container—in other words, the cannabis should be undetectable by smell by a police officer." 208 N.E.3d 579, 588–89 (Ill. App. Ct. 2022) (emphasis in original). The "smell of raw cannabis, without any corroborating factors, is [thus] sufficient to establish probable cause to search a person's vehicle" under state law. *Id.*; *see also People v. Hall*, 225 N.E.3d 673, 678 (Ill. App. Ct. 2023), *appeal pending* (May Term 2023) (holding that the odor of unburnt cannabis constituted probable cause for search of vehicle, as reasonable person in officer's position would believe "someone in the vehicle was at least transporting cannabis in a manner violating the Vehicle Code"); *People v. Mallery*, 228 N.E.3d 856, 869 (Ill. App. Ct. 2023) (stating there was sufficient probable cause for vehicle search based on police-trained canine's positive alert, where canine trained to alert to drugs including marijuana).[2]

The Second District of the Illinois Appellate Court has arrived at a similar conclusion. *E.g.*, *People v. Harris*, __ N.E.3d __, __, 2023 IL App (2d) 210697, ¶ 32 (Ill. App. 2d 2023) ("the smell of cannabis in a car still forms the basis for probable cause" post-legalization); *People v. Sims*, 207 N.E.3d 238, 260 (Ill. App. Ct. 2022), *reh'g denied* (May 4, 2022), *appeal denied*, 199 N.E.3d 1188 (Ill. 2022) ("the odor of raw cannabis emanating

---

[2] This opinion uses the term "unburnt" to refer to "raw" marijuana. We read the terms to mean the same thing.

from the vehicle when [the officer] first approached gave rise to probable cause to search the vehicle").

One Illinois case, heavily relied on by Jackson, is not in accord with other Illinois decisions. *People v. Stribling*, 228 N.E.3d 766, 773 (Ill. App. Ct. 2022). In *Stribling*, the Third District of the Illinois Appellate Court held that "the smell of … burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search the vehicle." *Id. Stribling* stated that Illinois's legalization of marijuana invalidated the Illinois Supreme Court's decision in *People v. Stout*, 477 N.E.2d 498 (Ill. 1985). *See Stribling*, 228 N.E.3d at 772. In *Stout*, the Illinois Supreme Court held that "distinctive odors" like burning marijuana "can be persuasive evidence of probable cause" without additional corroborating evidence. 477 N.E.2d at 502.

Even if *Stribling* is credited—notwithstanding *Molina* and *Harris*—it would not compel the conclusion that there was no probable cause here. *Stribling* is distinguishable, and we do not defer to Illinois courts on what constitutes probable cause under the Fourth Amendment. The conclusion in *Stribling* that probable cause did not exist was limited to the officer smelling burnt marijuana. The defendant in *Stribling* told law enforcement that "someone (he did not state that it was himself) had smoked in the vehicle 'a long time ago[.]'" 228 N.E.3d at 773. "There was no reason for the officer to think that the defendant was currently smoking cannabis in the car." *Id.* And "the smell of burnt cannabis may have lingered in the defendant's car or on his clothing." *Id.* The Third District's similar decision in *People v. Redmond*, also centered on the smell of burnt marijuana. 207 N.E.3d 1175, 1177 (Ill. 2023), *appeal allowed*, 210 N.E.3d 786 (Ill. 2023). And in *Redmond*, the

court stated, "there was no odor of raw cannabis nor any other factor indicative of improperly packaged cannabis or an unlawful amount of it in the vehicle." *Id.* at 1181.

The smell of unburnt marijuana outside a sealed container independently supplied probable cause and thus supported the direction for Jackson to step out of the car for the search.

## III

The central issue in this case is the legality of the officer ordering Jackson out of the car for a search. *Mimms* tells us that after a lawful stop, an officer can order occupants out of a car, *see* 434 U.S. at 111, and the totality of circumstances here supported probable cause for a search. In any event, the smell of unburnt marijuana provided probable cause. After exiting the vehicle, Jackson chose to run, where a firearm fell from his pants. The district court correctly concluded that evidence of the gun need not be suppressed.

For these reasons, we AFFIRM the district court's denial of Jackson's motion to suppress.